**William LITTLE, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America,
Defendant-Appellee.**

No. 85–6030.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 1986.

Decided July 14, 1986.

Kenneth G. Gordon, Los Angeles, Cal., for plaintiff-appellant.

Steven Frahm, Washington, D.C., for defendant-appellee.

Before WRIGHT and NELSON, Circuit Judges, and HOLLAND,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

In this case we must decide whether a property owner, holding title pursuant to a forclosure sale under a second deed of trust, can obtain redemption reimbursement for preredemption payments to a senior lienor. We reverse the district court's conclusion that the property owner is collaterally estopped from seeking reimbursement. But we affirm its conclusion that the property owner failed to comply with valid Treasury Regulations in seeking reimbursement. We hold that, despite this noncompliance with reimbursement procedures, the government's title upon redemp-

\* Of the District of Alaska.

tion is encumbered by the first deed of trust until it reimburses the property owner for his payment to a senior lienor.

## FACTS AND PROCEEDINGS BELOW

Detailed factual background information is presented in this court's opinion in *Little v. United States*, 704 F.2d 1100 (9th Cir. 1983). Key facts and proceedings through the prior appeal are summarized in the Appendix to this opinion.

In this appeal, Little seeks to enforce his right to receive reimbursement from the government for payments made to a senior lienor. On the previous appeal, we remanded the determination of the correct amount of the government's redemption tender under the Second Trust Deed foreclosure.

The district court heard argument on the parties' cross-motions for summary judgment. Based on stipulated facts, it found that Little had failed to follow Treasury Regulation § 301.7425–4(b)(4) in requesting reimbursement for his purchase of the First Trust Deed. It concluded also that he was estopped from claiming reimbursement as a result of adverse rulings on this issue in two prior district court proceedings. Judgment was entered for the government.

Little timely appealed. He presents these issues for our review:

(1) Did the district court err in concluding that redemption price determinations in related district court actions barred further claims for reimbursement of payments to a senior lienor?

(2) Is Treasury Regulation § 301.7425–4(b)(4) invalid as applied by the district court?

(3) Did the district court err in concluding that it lacked subject matter jurisdiction to consider reimbursement for Little's payments to a senior lienor because Little had failed to follow procedural requirements?

(4) Is the government's title free and clear of any claims of Little?

(5) Must the government reimburse Little for the value of removing the First Trust Deed encumbrance from its title?

## ANALYSIS

### I. *Introduction*

Section 7425(b) of the Internal Revenue Code provides that a non-judicial sale of real property to which the government claims a title derived from enforcement of a lien "shall ... be made subject to and without disturbing such lien or title, if notice of such lien was filed ... more than 30 days before such sale and the United States is not given [written] notice [at least 25 days prior to] such sale ...." 26 U.S.C. § 7425(b)(1). Both the First Trust Deed and Second Trust Deed foreclosures and sales at issue here were such non-judicial sales.

When Section 7425(b) applies, Section 7425(d)(1) gives the government a right to redeem the property within 120 days. The amount to be paid under such redemption is governed by 28 U.S.C. § 2410(d). 26 U.S.C. § 7425(d)(2).

Under Section 2410(d), the redemption price "shall be the sum of—(1) the actual amount paid by the purchaser at such sale ... (2) interest on the amount paid ... and (3) ... expenses necessarily incurred ...."

Treasury regulations implementing 26 U.S.C. § 7425(d) and 28 U.S.C. § 2410(d) provide that the amount to be paid under a Section 7425(d) redemption is to include "the amount, if any, of a payment made by the purchaser ... after the foreclosure sale to a holder of a senior lien (to the extent provided under paragraph (b)(4) of this section)." Treas.Reg. § 301.7425–4(b)(1)(iv).

Paragraph (b)(4) of the Regulations establishes the procedure by which the purchaser at a foreclosure sale can claim reimbursement from the government for payments made to a senior lienor after the foreclosure sale but prior to the government's redemption.[1]

### II. *Collateral Estoppel*

Little initiated two related actions regarding this property while the prior appeal to this court was pending. In April 1982, Little filed a complaint in California Superior Court for declaratory relief and an equitable lien, alleging that the government was enriched by $76,000 due to repair expenses ($16,000) and the foreclosure sale on the First Trust Deed ($60,000). He sought to have the sale rescinded or declared null and void. The action was removed to federal district court and was dismissed without prejudice in June 1982. *Little v. United States*, No. CV 82–2679, slip op. (C.D.Cal. June 30, 1982). Little did

---

1. The relevant parts of Treas.Reg. § 301.7425–4(b)(4), involving these reimbursement procedures, are summarized here:

Under paragraph (b)(4)(ii), the district director of the IRS "shall, in any case where a [Section 7425(d) ] redemption is contemplated, send notice to the purchaser [prior to the end of the 120-day redemption period] ... of his right ... to request reimbursement ... for a payment made to a senior lienor." The purchaser's request for reimbursement must be "mailed or delivered to the office specified" within 15 days.

The request for reimbursement "shall consist of—(A) [a] written itemized statement ... of the amount claimed [as] payment to a senior lienor, together with the supporting evidence requested in the notice from the [IRS], and (B) [a] waiver or other document that will be effective upon redemption ... to discharge ... or transfer to the United States, any interest in or lien on the property that may arise under local law with respect to the payment made to a senior lienor."

Paragraph (b)(4)(ii) of the Regulations provides also that "[u]nless a request for reimbursement is timely submitted ..., no amount shall be payable to the purchaser ... [for] a payment made to a senior lienor ...."

Under paragraph (b)(4)(iii), a proper request for reimbursement "shall be considered to be approved for the total amount claimed by the purchaser ... unless the [IRS] sends notice to the claimant ... within [a prescribed time period]. The notification of denial shall state the grounds for denial." Upon denial, "the request for reimbursement for a payment made to a senior lienor shall be treated as having been withdrawn by the purchaser ... and the [IRS] shall tender only the amount otherwise payable [for purchase price, interest and other necessarily incurred expenses]." Where a request is treated as withdrawn, reimbursement for payments to a senior lienor "may, in the discretion of the [IRS], be made after the redemption upon the resolution of the disagreement as to the amount [of such reimbursement]."

not appeal or attempt to amend his complaint.

In August 1982, Little filed an action in federal district court, *Little v. United States*, No. CV 82–4303, slip op. (C.D.Cal. Dec. 21, 1982), seeking the same declaratory and equitable relief. Again, he alleged that the government was unjustly enriched by his repair expenses and the foreclosure of the First Trust Deed. The action was dismissed with prejudice. The court found that Little had been paid the appropriate amount upon the government's redemption of the Second Trust Deed (purchase price plus interest). He did not appeal.

On remand in this action, the district court found that the issue of the correct government reimbursement for Little's payment to a senior lienor had been raised by Little in these two earlier proceedings. The court concluded that because it had already ruled that Little was fully paid, Little was estopped from asserting any further claims in the present action.

Whether collateral estoppel is available is a mixed question of law and fact in which the legal issues predominate. We review this question de novo. *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1519 (9th Cir.1985).

Collateral estoppel bars relitigation of issues actually litigated and necessarily determined by a court. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). The party asserting estoppel bears the burden of pleading and proving the identity of issues decided in the previous action. *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir.1980). Here, the government "must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Davis & Cox*, 751 F.2d at 1518.

■ The record indicates that the issue actually litigated in the two prior actions was whether to nullify the First Trust Deed foreclosure sale, not whether the government's tendered redemption under the Second Trust Deed was adequate to reimburse Little for his purchase of the First Trust Deed (prior to the foreclosure sale on the First Trust Deed). "Similarity between issues is not sufficient; collateral estoppel is applied only when the issues are *identical*." *Shapley v. Nevada Board of State Prison Commissioners*, 766 F.2d 404, 408 (9th Cir.1985) (emphasis added). The district court's statement in 82–4303–WMB that Little had been appropriately paid upon redemption by the government makes this a close question.

"Necessary inferences from the judgment, pleadings and evidence will be given preclusive effect." *Davis & Cox*, 751 F.2d at 1518. But if there is doubt, collateral estoppel will not be applied, especially if the previous decision could have been rationally grounded on an issue other than that which the defendant seeks to foreclose from consideration. *Id.* at 1518–19.

We find that the government did not carry its burden of showing that the two previous dismissals necessarily decided the issue of the government's proper redemption reimbursement of Little's payment to a senior lienor.[2]

### III.  *Validity of Treasury Regulations*

Little did not challenge the validity of the Treasury Regulations in district court. Issues not raised below will generally not be considered on appeal. *Grauvogel v. Commissioner*, 768 F.2d 1087, 1090 (9th Cir. 1985). We conclude that this case falls

---

**2.** Little contends that the law of the case doctrine *required* the district court to determine the correctness of the redemption amount tendered and precluded reliance on collateral estoppel. He contends also that the government waived its right to defend based on collateral estoppel and failure to exhaust administrative remedies by failing to raise these arguments in the prior appeal. He has cited no authority to support either proposition and we have found none. Moreover, collateral estoppel and exhaustion of administrative remedies are affirmative defenses, *see* Fed.R.Civ.P. 8(c), and must be pleaded in the trial court. Our prior opinion "should not be read to preclude assertion of the[se] affirmative defenses ... on remand to the district court." *Hernandez v. City of Lafayette*, 649 F.2d 336, 337 (5th Cir.1981).

within one of the narrow exceptions for exercising discretion to hear such an issue. *See Bolker v. Commissioner,* 760 F.2d 1039, 1042 (9th Cir.1985) ("issue presented is purely one of law and ... the pertinent record has been fully developed").

Little claims that *Equity Mortgage Corp. v. Loftus,* 504 F.2d 1071 (4th Cir. 1974), establishes a substantive right under 26 U.S.C. § 7425(d) to receive reimbursement for payments made to a senior lienor. He claims that this statutory right to reimbursement cannot be limited by requiring compliance with procedural regulations.

Under 26 U.S.C. § 7805(a), "the Secretary or his delegate shall prescribe all needful rules and regulations for the enforcement of this Title ...." Little argues that, because Congress did not explicitly direct the Secretary to promulgate regulations implementing 26 U.S.C. § 7425(d) or 28 U.S.C. § 2410(d), the Treasury Regulations here are invalid.

■ Regulations promulgated under the Secretary's authority in Section 7805(a) "if found to 'implement the congressional mandate in some reasonable manner,' must be upheld." *United States v. Cartwright,* 411 U.S. 546, 550, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528 (1973) (quoting *United States v. Correll,* 389 U.S. 299, 307, 88 S.Ct. 445, 449, 19 L.Ed.2d 537 (1967)). The courts are "not in the business of administering the tax laws of the Nation." *Id.* That task has been delegated to the Secretary of the Treasury in 26 U.S.C. § 7805(a). *Id.*

"Treasury Regulations 'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes.'" *Commissioner v. Portland Cement Co.,* 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981) (quoting *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948)).

■ Little has not shown that the procedures for requesting reimbursement are unreasonable or that requiring documentation for reimbursable expenses is plainly inconsistent with the redemption statutes. His challenge to the validity of the Trea-

sury Regulations as applied here is rejected.

**IV.** *Compliance with Treasury Regulations*

The district court found that Little had failed to follow regulatory requirements in seeking reimbursement for his payments to a senior lienor. Little does not claim that his request satisfied the various requirements of Treas.Reg. § 301.7425–4(b)(4)(ii). Instead, he argues that these "procedural regulations" could not divest the district court of its duty on remand to determine the factual issues relevant to the correct amount of the government's redemption payment.

Little suggests an unusually strict application of the general rule that "[o]n remand, a trial court may not deviate from the mandate of an appellate court." *In re Beverly Hills Bancorp.,* 752 F.2d 1334, 1337 (9th Cir.1984). On remand a trial court may consider issues not decided by the appellate court "explicitly or by necessary implication." *Id.* (quoting *Liberty Mutual Insurance Co. v. EEOC,* 691 F.2d 438, 441 (9th Cir.1982)).

■ Here, we could not decide in the previous appeal the correct amount to be paid by the government to redeem the Second Trust Deed. The question of Little's compliance with procedural requirements for requesting reimbursement for payments to a senior lienor was left open by our mandate. The district court's consideration of this issue was within the scope of the remand and did not vary or exceed our mandate. *See In re Sanford Fork & Tool Co.,* 160 U.S. 247, 255–56, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895).

Little's assertion that the district court was required to ignore the Treasury Regulation procedures in considering the amount-of-redemption issue is without merit. We are aware of no authority in support of such a novel twist on the law of the case doctrine. The district court properly concluded that Little had failed to comply with the procedural requirements govern-

ing his request for reimbursement of a payment made to a senior lienor.

## V. *Application of the Law of the Case Doctrine to Previous Determinations of Government Title*

■ Finding that Little failed to comply with valid Treasury Regulations in seeking reimbursement does not end our inquiry. His noncompliance with reimbursement procedures does not mean that the government's tendered redemption automatically conveyed clear title to the property, free of any encumbrance.

It is necessary to determine the government's interest in the property based on its tendered redemption under the Second Trust Deed.

In the previous appeal, we affirmed the district court as to the status of the government's title upon redemption and after foreclosure. *Little v. United States,* 704 F.2d 1100, 1108 (9th Cir.1983). We take this opportunity to resolve an apparent inconsistency between our prior holding and that of the district court.

That court apparently overlooked an important fact in determining the status of the government's title. The government's title after redemption under the Second Trust Deed *was subject to the First Trust Deed.* The court erred when it concluded that the government's title was "free and clear" of any encumbrances after the Trust Deed foreclosure and sale. The government's title remained subject to the First Trust Deed. Section 7425(b) does not require or permit the destruction of this First Trust Deed when the nonjudicial foreclosure sale was held without proper notice to the government. It provides only that such sale "shall ... be made subject to and without disturbing [the government's] lien or title." 26 U.S.C. § 7425(b)(1).

In the prior appeal we correctly held that "the *title acquired by the United States* upon its redemption of the property [under the Second Trust Deed] *was not disturbed* by the subsequent [First Trust Deed] foreclosure and sale of the property." *Little,* 704 F.2d at 1107–08 (emphasis added). However, we failed to recognize explicitly that the government's title upon redemption *was subject to the First Trust Deed* and remained so encumbered after the First Trust Deed foreclosure (of which the government had no notice). We must interpret our prior holding to mean that the government's title was *not* "free and clear" of encumbrances (specifically the First Trust Deed).[3]

This interpretation is compelled by the nature of our prior remand. We recognized Little's claim for reimbursement of the "$60,000 [Little paid] to obtain the beneficial interest in the first deed of trust, *a senior encumbrance on the property which was not extinguished by the* [Second Trust Deed] *foreclosure sale." Id.* at 1108 (emphasis added). We understood that the government obtained an *encumbered* title upon redemption and that the subsequent First Trust Deed foreclosure, invalid as to the government, left that encumbered title undisturbed. *Id.* at 1107–08. This conclusion should be read as a correction of the district court's erroneous conclusion that the government title was "free and clear" after the First Deed foreclosure.

We find that the government's title upon redemption under the Second Trust Deed was subject to the First Trust Deed. The subsequent foreclosure of the First Trust Deed and sale (invalid as to the government for lack of notice) did not disturb this title. The government's title remained subject to the First Trust Deed.

---

**3.** Our prior decision is "to be interpreted reasonably and not in a manner to do injustice ...." *Mobil Oil Corp. v. Department of Energy,* 647 F.2d 142, 145 (Temp.Emerg.Ct.App.1981) (quoting *Wilkinson v. Massachusetts Bonding & Insurance Co.,* 16 F.2d 66, 67 (5th Cir.1926)). Where

our prior ruling is "unclear or open to conflicting interpretations," we may "presume that the ruling was not erroneous and was otherwise in accordance with law." *Chapman v. NASA,* 736 F.2d 238, 242 (5th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 517, 83 L.Ed.2d 406 (1984).

## VI. *Government's Interest Upon Redemption*

■ The final question is what property interest was acquired by the government upon redemption. Because Little failed to comply with reimbursement procedures, the "correct" redemption amount is equal to the purchase price plus interest and excludes any payments to a senior lienor. The property interest redeemed and acquired by the government is equivalent to that held by Little after the Second Trust Deed foreclosure: title to the property, subject to the First Trust Deed. *See* 26 U.S.C. § 7425(d)(3)(C); Treas.Reg. § 301.-7425–4(c)(3); *Olympic Federal Savings & Loan Association v. Regan,* 648 F.2d 1218, 1220 (9th Cir.1981) (when redeeming under § 7425(d), the government takes subject to encumbrances existing at the time the redemptionee acquired the property). This encumbered title is unaffected by the subsequent First Trust Deed foreclosure and sale of which the government had no notice. 26 U.S.C. § 7425(b)(1). The "correct" redemption amount does not convey clear title to the government.

The government may now obtain unencumbered title only by reimbursing Little for his payments to a senior lienor. *See* Treas.Reg. § 301.7425–4(b)(4)(iii) (IRS discretion to reimburse "upon the resolution of the disagreement as to the amount properly payable"); *Loftus,* 504 F.2d at 1078 (where government made original tender under good faith belief that payments to senior lienor need not be reimbursed, government should be given reasonable period after decision upon remand to perfect its original redemption tender).

Despite our holding on the issue of Little's compliance with Treasury Regulations, the government's title upon redemption under the Second Trust Deed is encumbered by the First Trust Deed until it reimburses Little for his payments to the holder of that First Trust Deed.[4]

---

**4.** Any difficulty in determining the amount of reimbursement owed Little for his payment to a senior lienor is eliminated by the parties' stipu-

## CONCLUSION

We find that the district court erred in concluding that collateral estoppel barred Little's claim for reimbursement. However, it was correct in holding that Little failed to comply with regulatory procedures in requesting reimbursement for his payments to a senior lienor.

Although Little's request for reimbursement for senior lienor payments was improper, the government's title upon redemption is not unencumbered, but is subject to the First Trust Deed. To obtain a clear title, it must reimburse Little in the amount of $60,000 for his payments to the senior lienor.

Each party shall bear its own costs for this appeal. REVERSED IN PART. AFFIRMED IN PART.

## APPENDIX

### SUMMARY OF FACTS AND PRIOR PROCEEDINGS

| | |
|---|---|
| 8/25/78 | Rojas (owner) encumbered the subject property—First Trust Deed. |
| 11/7/78 | Rojas further encumbered the property—Second Trust Deed. |
| 5/6/80 | Rojas conveyed an undivided one-half interest to Bell. |
| 9/17/80 | IRS filed a federal tax lien against Bell. |
| 11/4/80 | IRS filed a second federal tax lien against Bell. |
| 10/27/80 | Maycock acquired the beneficial interests under the First Trust Deed, now in default. |
| 12/16/80 | Second Trust Deed foreclosure sale. Property was sold to Mendoza for $23,670. Notice of sale was given to the IRS as to the September tax lien, but not as to the November tax lien. |
| 12/17/80 | Mendoza conveyed the property (subject to the First Trust Deed) to appellant Little. |
| 12/19/80 | Maycock and Little entered an agreement for Little to purchase Maycock's beneficial interest under the First Trust Deed for $60,000. |
| 1/13/81 | IRS officer Schneider notified Little of the government's right to redeem based on the Second Trust Deed foreclosure and advised him of the |

lation that Little paid $60,000 to the holder of the First Trust Deed.

requirements for requesting reimbursement for payments to a senior lienor.

3/3/81 Beneficial interest under the First Trust Deed was transferred from Maycock to Darmiento (Little's nominee).

3/9/81 Little's attorney sent the IRS a letter listing as reimbursable expenses the purchase price paid to Mendoza, repair expenses and $60,000 for the purchase of the First Trust Deed from Maycock.

3/13/81 IRS denied Little's claim for reimbursement for failure to comply with proper procedures.

3/20/81 IRS seized the property.

3/23/81 Little filed this action in federal district court for a Temporary Restraining Order, a Preliminary Injunction, and to Quiet Title.

4/14/81 The court granted a preliminary injunction restraining the government from exercising its right of redemption under the Second Trust Deed.

4/15/81 (Final day of 120-day statutory redemption period) This court stayed the injunction order pending appeal. The government then timely redeemed the property by tendering $24,136.92 ($23,670 purchase price plus $466.92 interest).

5/14/81 Trustee under First Trust Deed filed notice of trustee sale to be held on May 28, 1981.

5/28/81 First Trust Deed foreclosure sale. Darmiento, nominee of Little, purchased the property for $42,611.50. United States, holder of title to the property (subject to the First Trust Deed) pursuant to its April 15, 1981 redemption, was not notified of this sale.

7/4/81 Little recorded the Trustee's Deed Upon Sale (dated May 28, 1981).

9/14/81 Little filed a first amended and supplemental complaint in his district court action, claiming that (1) the government had no "property interest" to which the tax liens could attach, (2) if the tax liens did attach, the government failed to tender the proper amount upon redemption, and (3) if the redemption was proper, the government acquired the property subject to the First Trust Deed, and the subsequent First Trust Deed foreclosure divested it of the title it had acquired through redemption.

3/10/82 The district court granted summary judgment for the government, holding that the government's redemption under the Second Trust Deed was proper and it had acquired title by operation of Section 7425(d). It also rejected Little's request to quiet title based on the foreclosure of the First Trust Deed, holding that this nonjudicial sale (without notice to the government) was made subject to and without disturbing the government's title. It declared that the government had title free and clear of any and all rights, title and interest of Little.

4/13/82 Little filed a notice of appeal.

4/26/83 We held that the government had a property interest to which the tax liens attached and that its title upon redemption "was not disturbed by the subsequent [First Trust Deed] foreclosure and sale of the property." *Little,* 704 F.2d at 1107–08. We concluded that the factual record was inadequate to decide the correctness of the amount tendered by the government, specifically whether the Second Trust Deed redemption price should include the amount of Little's post-foreclosure payment to a holder of a senior lien (First Trust Deed). We remanded this matter for further district court proceedings.