985 F.2d 577
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
WASHINGTON PUBLIC POWER SUPPLY SYSTEM, a Washington
municipal corporation, Plaintiff-Appellant,
v.
PITTSBURGH-DES MOINES CORP., a Pennsylvania corporation;
The American Insurance Company, a New Jersey
corporation, Defendants-Appellees.
 No. 91-35669.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 7, 1993.
Decided Jan. 26, 1993.
 
 Appeal from the United States District Court for the Eastern District of Washington, No. CV-84-00344-JLQ; Justin L. Quackenbush, District Judge, Presiding.
 E.D.Wash. [Appeal after Remand from, 876 F.2d 690]
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 Before ALARCON, RYMER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff Washington Public Power Supply System ("WPPSS") appeals from the district court's grant of partial summary judgment in favor of Pittsburgh-Des Moines Corporation and American Insurance Company (referred to collectively as "PDM"), which effectively estops WPPSS from claiming consequential damages in a breach of contract cause of action, thereby rendering any potential award to WPPSS de minimus.
 
 BACKGROUND AND PROCEDURAL HISTORY
 
 3
 In 1972, WPPSS and PDM entered into a contract designated No. 213 to build a containment vessel for a nuclear power reactor. In 1975, an inspection showed that the containment vessel needed retrofitting to accommodate increased loads. WPPSS awarded PDM the retrofitting work, which was done under Contract Nos. 213A (awarded in 1977) and 213B (awarded in 1981). In 1979, PDM's review of its quality assurance program[1] ("QA Program") uncovered deficiencies. During much of 1980, PDM was forced to cease work on the retrofitting while it reviewed and overhauled its QA Program. In 1981, while PDM was working on upgrading the hardware and QA documentation, the parties entered into negotiations for Contract No. 213B which was to change certain payment provisions. In 1981, the parties executed Modification No. 164 ("Mod. 164") which bridged the transition from Contract 213A to Contract 213B by providing, inter alia, for the settlement and reservation of certain of WPPSS's claims against PDM. PDM completed the retrofitting work in 1982. The reactor is completely operational.
 
 A. WPPSS's Complaint
 
 4
 In May, 1984, WPPSS filed a complaint against PDM in the district court alleging breach of contract and breach of warranty under Contracts 213A and 213B. WPPSS alleged that PDM's failure to properly implement its QA Program constituted a material breach of the contract. WPPSS also alleged that PDM breached the warranty provisions of the contract which guaranteed repair and replacement for all defective work under Contracts 213A and 213B. WPPSS requested both direct damages for repair and replacement and consequential damages.
 
 B. The 1986 Summary Judgment Ruling
 
 5
 After extensive discovery, the parties filed cross-motions for summary judgment which the district court decided by a memorandum and order dated January 24, 1986. The court found that the provisions of Mod. 164 were clear and unambiguous, and manifested an intent that 213A and 213B be construed as a single contract.[2] The court further held that WPPSS could pursue only its breach of warranty, but not its breach of contract claims against PDM because Mod. 164's language reserved only issues related to "defective and nonconforming" work, terms which unambiguously signified warranty notions.
 
 
 6
 The court also concluded that there were triable issues of fact as to whether 213A or 213B's terms were to govern the reserved warranty claims. The court found that if 213A governed saved claims, its language left uncertainties as to when the warranty would attach.
 
 C. The 1986 Jury Trial on Warranty Issues
 
 7
 A jury trial was held in June, 1986, on the issues related to the warranty claims. The jury found that the 213B warranty controlled WPPSS's breach of warranty claim[3], which had the effect of limiting recovery to repair of materials and equipment as per 213B's express limitation on warranty damages.
 
 D. The First Ninth Circuit Appeal: PDM I
 
 8
 WPPSS appealed both the jury verdict and the summary judgment. In Washington Pub. Power Supply Sys. v. Pittsburgh-Des Moines Corp. ("PDM I"), 876 F.2d 690 (9th Cir.1989), this court affirmed the jury's verdict, affirmed the summary judgment in part, but reversed the district court's summary judgment ruling that Mod. 164 limited WPPSS's claim to warranty issues only. The PDM I court found that the words in Mod. 164 p 2 "defective and non-conforming" could be associated with breach of contract as well as warranty claims. Id. at 693-94. That court concluded summary judgment was improper because conflicting inferences could be drawn as to the parties' intended meaning of those terms. In remanding the issue of the parties' intent, PDM I revived WPPSS's breach of contract claims.
 
 E. The 1990 Summary Judgment Ruling
 
 9
 In June, 1989, PDM filed two alternative motions for partial summary judgment regarding the legal effect of the district court's 1986 Summary Judgment, the jury verdict, and the Ninth Circuit's ruling as to certain issues regarding WPPSS's possible contract claims.
 
 
 10
 On October 22, 1990, the district court granted PDM's motion for partial summary judgment, holding as follows:
 
 
 11
 (1) The prior jury verdict that 213A did not govern reserved warranty claims collaterally estopped WPPSS from claiming that 213A governed the breach of contract claims (i.e., 213B governs the breach of contract claims).
 
 
 12
 (2) Given that 213B governs WPPSS's breach of contract claim (as per the collateral estoppel ruling), WPPSS is precluded from seeking consequential damages because such damages are not permitted under 213B subsection 3.1.
 
 
 13
 (3) The 1986 Summary Judgment Order, as affirmed by PDM I, limits WPPSS's reserved contract claims to those relating to defective or non-conforming work that arose from improper QA implementation.
 
 
 14
 (4) Mod. 164's warranty provision limits damages recoverable under reserved breach of contract claims to the direct cost of repairing or replacing defective or nonconforming hardware.
 
 
 15
 The district court also denied PDM's alternative motion for summary judgment, holding as follows:
 
 
 16
 (5) Evidence submitted by the parties could reasonably support conflicting inferences as to the parties' intent to waive contract remedies and to reserve only warranty remedies.
 
 
 17
 PDM filed a Motion to Revise the Summary Judgment and WPPSS filed a Motion to Reconsider, both of which were denied by order dated May 1, 1991. Upon WPPSS's request, the district court dismissed all of WPPSS's contract claims with prejudice so that WPPSS could appeal the district court's partial grant of summary judgment.
 
 
 18
 We AFFIRM in part and REVERSE in part.
 
 STANDARD OF REVIEW & APPLICABLE LAW
 
 19
 A district court's grant of summary judgment and its interpretation of state law is reviewed de novo. PDM I, 876 F.2d at 692. "In order to affirm a grant of summary judgment, a reviewing court must be satisfied that no genuine issues of material fact remain and that the moving party is entitled to judgment as a matter of law." Hernandez v. City of Los Angeles, 624 F.2d 935, 937 (9th Cir.1980). All evidence must be considered in a light most favorable to the non-moving party. Id.
 
 
 20
 This is a diversity case between a Washington plaintiff and Pennsylvania and New Jersey defendants. The parties have agreed the contract shall be construed and interpreted in accordance with the laws of the State of Washington.
 
 DISCUSSION
 A. COLLATERAL ESTOPPEL
 
 21
 The first issue raised in this appeal is whether the district court properly applied the rules of collateral estoppel when it found that the prior jury verdict estopped WPPSS from claiming contract 213A governs the breach of contract claims.
 
 
 22
 "Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties." Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1320 (9th Cir.1992). In this case, Contract 213A permits WPPSS to claim consequential damages for a breach of contract cause of action whereas the availability of consequential damages under 213B is unclear. Other remedies would be de minimus under the facts of the case. Thus, the district court's application of collateral estoppel crucially affects WPPSS's entire cause of action by limiting the possible amount of recovery.
 
 
 23
 In reviewing the district court's decision, we must first consider the applicable estoppel law in a diversity case. The Ninth Circuit holds that a federal court sitting in diversity must apply the forum state's rule of collateral estoppel when, as in the present case, the issue had been previously resolved by a federal court sitting in diversity. Bates v. Union Oil Co. of California, 944 F.2d 647, 649 (9th Cir.1991), cert. denied, 112 S.Ct. 1761 (1992). The parties have agreed to regard Washington as the forum state. Under the law of Washington, collateral estoppel in a diversity case is governed by federal law. Alcantara v. Boeing Co., 705 P.2d 1222, 1225 (Wash.App.1985). Therefore, we turn to federal law to determine the preclusive effect of the jury's verdict.
 
 
 24
 Whether collateral estoppel is available is a mixed question of law and fact subject to de novo review. Plaine v. McCabe, 797 F.2d 713, 718 (9th Cir.1986). Once the availability of collateral estoppel is determined, a district court's decision to apply collateral estoppel is reviewed for abuse of discretion. Id.
 
 
 25
 Under the federal standard, to foreclose relitigation of an issue under collateral estoppel, the following three elements must be met:
 
 
 26
 (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.
 
 
 27
 Bear Stearns, 966 F.2d at 1320 (emphasis added). None of these elements is met in the present case.
 
 1. Identity of Issues
 
 28
 "The party asserting estoppel bears the burden of pleading and proving the identity of issues decided in the previous action." Little v. United States, 794 F.2d 484, 487 (9th Cir.1986). To sustain this burden, PDM " 'must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action.' " Id. (quoting Davis & Cox v. Summa Corp., 751 F.2d 1507, 1518 (9th Cir.1985) (emphasis added).
 
 
 29
 "Similarity between issues is not sufficient; collateral estoppel is applied only when the issues are identical." Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 408 (9th Cir.1985) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979)) (emphasis added); accord Little, 794 F.2d at 487; Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1357 (9th Cir.1985). The Ninth Circuit has strictly applied the identity requirement. See, e.g., Shapley, 766 F.2d at 408 (holding that issue of whether prison doctors were liable for deliberate medical indifference was not identical where the second claim involved a different incident); Little, 794 F.2d at 487 (holding the issue of whether to nullify a first trust deed foreclosure sale is not identical to the issue of whether the government's tendered redemption under a second trust deed was adequate reimbursement); Levi Strauss, 778 F.2d at 1357 (holding the issue of whether a pants pocket tab has secondary meaning within the Lanham Trade-Mark Act is not identical to the issue of whether a shirt pocket tab has secondary meaning within the Act); Bear Stearns, 966 F.2d at 1323 (holding a state common law negligence and fraud claim is not identical to a federal 10b-5 claim under the Securities Exchange Act); Clark v. Watchie, 513 F.2d 994, 998-1000 (9th Cir.) (holding a state breach of fiduciary duty claim is not identical to a federal 10b-5 claim), cert. denied, 423 U.S. 841 (1975).
 
 
 30
 In the present case, the issues are not identical because the 1986 trial was limited to warranty interpretation issues, not breach of contract issues. PDM presents no argument whatsoever that the two issues are identical, thus failing to meet its burden of presenting a record and pinpointing the litigated issues with exactitude.
 
 
 31
 The district court's affirmation of identity of issues was based principally on its finding that there was "a substantial overlap of evidence and argument" between the two cases. However, federal law does not regard the "substantial overlap of evidence and argument" factor to be determinative in an identity of issue analysis, particularly where different facts are at issue. See, e.g., Levi Strauss 778 F.2d at 1357 (holding that an offer of different evidence in the second case would not invoke collateral estoppel where different facts were at issue in the cases).[4] Here, the evidence in the first case was offered to prove or disprove warranty provisions in the contracts, while the evidence in the second case, whether the same or not, will be offered to prove or disprove breach of contract provisions. No federal case stands for the proposition that identical evidence renders the issues identical.
 
 
 32
 Moreover, even if such a factor were considered, it also fails because the evidence in the two cases does not overlap. WPPSS plans to introduce additional evidence about the extent of PDM's breach prior to Mod. 164, beyond discussions and perceptions which occurred during Mod. 164 negotiations, which is relevant to the question of whether WPPSS intended to reserve a breach of contract claim.
 
 
 33
 In sum, the identity of issues element has not been met.
 
 2. Actually Litigated
 
 34
 PDM must show that the breach of contract issue was " 'actually decided' after [WPPSS had] a 'full and fair opportunity' for litigation." Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir.1988) (citation omitted). "Collateral estoppel is inappropriate if there is any doubt as to whether an issue was actually litigated in a prior proceeding." Eureka Federal Sav. & Loan v. Amer. Cas. Co. of Reading, Pa., 873 F.2d 229, 233 (9th Cir.1989) (emphasis added).
 
 
 35
 It is undisputed that the district court expressly removed WPPSS's contract claims from jury consideration when it granted the motion for summary judgment in 1986. Therefore, PDM fails to prove the breach of contract issue was actually litigated.
 
 
 36
 3. Issue was Critical and Necessary to Prior Decision
 
 
 37
 An issue may not be relitigated if the determination of the issue was critical and necessary to the judgment reached in the prior litigation. Bear Stearns, 966 F.2d at 1320; accord Segal v. American Tel. & Tel. Co., 606 F.2d 842, 845 n. 2 (9th Cir.1979). The burden is upon PDM to show with "clarity and certainty" that the breach of contract issue was "necessarily decided" by the jury. United States v. Richard, 892 F.2d 761, 763 (9th Cir.1989); Bear Stearns, 966 F.2d at 1321.
 
 
 38
 PDM asserts the jury's decision that 213B governs warrant claims implies the jury "necessarily decided" that 213B governs contract claims as well.
 
 
 39
 "Necessary inferences from the judgment, pleadings and evidence will be given preclusive effect. But if there is doubt, collateral estoppel will not be applied, especially if the previous decision could have been rationally grounded on an issue other than that which the defendant seeks to foreclose from consideration." Little, 794 F.2d at 487 (citations omitted); accord Davis & Cox, 751 F.2d at 1518. Therefore, we "must determine whether the jury could have grounded its 'verdict' upon any other issue." Pettaway v. Plummer, 943 F.2d 1041, 1044 (9th Cir.1991) (citing Ashe v. Swenson, 397 U.S. 436, 444 (1970)), cert. denied, 113 S.Ct. 296 (1992).
 
 
 40
 In the present case, the jury could have reached its decision about reserved warranty claims without necessarily having reached a decision about the reserved breach of contract claims, as follows. Paragraph two of Mod. 164 reserves claims for issues between WPPSS and PDM "that may arise from [PDM's] failure to properly implement the [QA Program] as set forth in the 2808-213A by reference herein as applicable to this issue." Mod. 164, p 2 (emphasis added). The reference to Contract 213A in paragraph two could be interpreted to mean that the parties intended that 213A govern all reserved claims.
 
 
 41
 However, paragraph eight of Mod. 164 provides, in pertinent part:
 
 
 42
 Delete the following specification pages and insert attached revised or added pages as follows:
 
 
 43
 Delete: 1A Section [containing 213A warranty provisions] in its entirety
 
 
 44
 Insert: 1A Section [containing 213B warranty provisions] in its entirety, FBS 3/1/81
 
 
 45
 Mod. 164, p 8 (emphasis added). Paragraph eight could be interpreted to mean that 213A's warranty provisions alone were otherwise extinguished. See PDM I, 876 F.2d at 695. The jury might have decided that while paragraph two indicates that reserved claims were generally governed by 213A, warranty claims were expressly excepted from the general provision by virtue of the delete/insert provisions of paragraph eight. Under this scenario, the contract claims would still be governed by 213A in accordance with p 2, and the warranty claims would be governed by 213B in accordance with p 8. Thus, the "jury could have grounded its verdict on an issue other than that which [PDM] seeks to foreclose from consideration." Pettaway, 943 F.2d at 1044.
 
 
 46
 In conclusion, because of the foregoing three-factor analysis, PDM has failed to meet the burden necessary for asserting a collateral estoppel defense and the district court erred in foreclosing by summary judgment the issue of whether 213A governs a reserved breach of contract claim.
 
 B. LIMITATIONS ON RESERVED CLAIMS
 
 47
 The district court held that Mod. 164 limits reserved claims to those related to defective or non-conforming work arising from improper QA Program implementation. This conclusion is properly supported by the clear language of Mod. 164, this court's decision in PDM I, 876 F.2d at 692-93[5], and the uncontested finding in the district court's 1986 Memorandum and Order ("M & O"). The 1990 summary judgment ruling on this issue is not in error.[6]
 
 C. LIMITATIONS ON RECOVERABLE DAMAGES
 1. Consequential Damages
 
 48
 In the 1990 summary judgment order, the district court found Contract 213B unambiguously excludes liability for any consequential damages, under both breach of warranty and breach of contract claims.[7]
 
 
 49
 WPPSS contends that summary judgment is inappropriate because section 3.1 may be reasonably construed as a limitation on only the warranty remedy inasmuch as it appears under the main heading, "3.0 WARRANTIES." PDM counters that the district court's decision is correct because the heading of subsection 3.1 and the first sentence of the subsection are general terms that are not limited to warranty claims only.
 
 
 50
 In reviewing a grant of summary judgment, we must be satisfied that there are no genuine issues of material fact. WPPSS, as the non-moving party, is entitled to have the evidence considered in a light most favorable to its position. Hernandez, 624 F.2d at 937. Under Washington law, a contract is ambiguous where the terms are capable of being understood in more than one manner. PDM I, 692 F.2d at 692 (citing McGary v. Westlake Investors, 99 Wash.2d 280, 661 P.2d 971, 974 (1983)); see also Fraternal Order of Eagles v. General Accident Ins. Co. of Am., 792 P.2d 178, 180 (Wash.App.1990).
 
 
 51
 In the present case, WPPSS has raised sufficient ambiguity as to preclude summary judgment on this issue by proffering a reasonable interpretation that the parties intended section 3.1's limitation on consequential damages to be applicable only to warranty claims.[8]
 
 2. Direct Costs of Repair or Replacement
 
 52
 The district court next held that because it had already decided contract 213B governed any breach of contract claims reserved by Mod. 164, and because reserved claims were limited by Mod. 164 to those related to "defective or non-conforming work that arose from improper QA Program implementation", then Mod. 164 necessarily limited the damages recoverable under the contract claims to the direct costs of repairing or replacing defective or nonconforming hardware.
 
 
 53
 Even assuming for the sake of argument that 213B governs the breach of contract claims, under Washington's theory of permissive remedies, the provisions in 213B do not support the district court's holding. Under Washington law, "a remedy specified in a contract is to be considered permissive rather than exclusive, unless so provided in the contract either expressly or by necessary implication." Kathman v. Wakeling, 417 P.2d 840, 843 (Wash.1966); accord Nelson v. Wilson, 571 P.2d 945, 946 (Wash.App.1977). For example, in American Nursery Prods., Inc. v. Indian Wells Orchards, 797 P.2d 477, 483 (Wash.1990), the Supreme Court of Washington sitting en banc held that despite contract language that read: " 'in no event shall Grower be subject to or liable for incidental or consequential damages,' " consequential damages were still available because the "limited remedies were not expressly agreed to in the contract to be exclusive remedies...." Id. (emphasis added).
 
 
 54
 In the present case, Contract 213B does not expressly exclude all available remedies. In fact, section 4.0 of both 213A and 213B expressly reserves other remedies. That section provides: "[a]ny and all rights and remedies of [WPPSS] under this Contract shall be cumulative and not exclusive of each other and may be prosecuted separately or concurrently, as [WPPSS] may determine." (Emphasis added). Further, as discussed previously, 213B's provision excluding consequential damages is arguably limited to breach of warranty claims only.
 
 
 55
 Moreover, this holding is inconsistent with the district court's denial of PDM's alternative motion. The district court denied PDM's motion because evidence submitted by the parties supported conflicting inferences as to the parties' intent to waive contract remedies and to reserve only warranty remedies. However, the present finding that damages were limited to the cost of repairing nonconforming hardware necessarily also determines that only the warranty remedy was intended to be reserved. Such internal inconsistency further highlights factual issues that are inappropriate for summary judgment adjudication.
 
 
 56
 In sum, the district court erred in holding as a matter of law that Mod. 164 limited the damages recoverable under contract claims to the direct costs of repair or replacement.[9]
 
 D. WPPSS's REQUEST FOR GUIDANCE
 
 57
 In its May 1, 1991 order denying WPPSS's motion for reconsideration, the district court indicated that in a future trial it might be inclined to admit the prior jury verdict into evidence and probably afford such evidence great weight. However, the district court noted that it could not make a definitive decision on this issue given its hypothetical status. WPPSS requests that this court give clear guidance to the district court that it would commit error on remand if it instructed a new jury that the prior jury verdict should be afforded great weight.
 
 
 58
 Because the district court has not actually ruled on this issue, it cannot be reviewed by this court. 28 U.S.C. § 1291 (this court has jurisdiction to review only final orders of district courts).
 
 
 59
 For the same reason, we also decline to review the district court's intimations about possible evidentiary rulings in the forthcoming trial.
 
 CONCLUSION
 
 60
 In conclusion, we affirm the district court's holding that Mod. 164 limits reserved claims to those related to defective or nonconforming work arising from improper QA Program implementation. We reverse the district court's holdings that the jury's verdict collaterally estops WPPSS from arguing that 213A governs reserved contract claims; that contract 213B excludes liability for consequential damages; and that WPPSS may only recover damages for the direct costs of repairing or replacing defective or nonconforming hardware.
 
 
 61
 AFFIRMED in part, REVERSED in part and REMANDED. No costs allowed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 QA Programs are required for nuclear power plants by the Nuclear Regulatory Commission. See 10 C.F.R. § 50.34 (1991)
 
 
 [2]
 The sections of Mod. 164 pertinent to the district court's decision are as follows:
 
 
 [2]
 Provides for settlement and compensation for all completed contract work in place, approved and accepted by [WPPSS] up to and including February 28, 1981 on the basis of a negotiated cost incurred of $50,329,631. Payment is in consideration of settlement and full and final compromise of all outstanding unexecuted change orders, claims, materials on site ... causes of action and damages arising out of or in connection with said performance of the [213A] Contract up to and including February 28, 1981, excluding any issues between [WPPSS] and [PDM] related to defective or nonconforming work accomplished prior to February 28, 1981 and that may arise from [PDM's] failure to properly implement the Quality Assurance Program as set forth in the [213A Contract] by reference herein as applicable to this issue
 
 
 [3]
 Provides for payment for the work required in the performance of the [213B] Contract, subsequent to February 28, 1981 in accordance with terms and conditions as specified hereinafter
 
 
 [3]
 The jury returned a verdict by special interrogatories and answered the following two questions in the negative:
 (1) Has [WPPSS] established by a preponderance of the evidence that when the parties executed Contract 213A they agreed the warranty under 213A made PDM responsible for the cost of repair and replacement of non-conforming work discovered before the work was complete for turnover?
 (2) Has [WPPSS] established by a preponderance of the evidence that, when the parties adopted "Mod. 164," both parties agreed to retain the provisions in Contract 213A to govern [WPPSS's] warranty claims that were not released under Mod. 164?
 
 
 [4]
 The overlap of evidence factor has been considered in res judicata analysis. See Bear Stearns, 966 F.2d at 1320; Shapley, 766 F.2d at 406. However, we have found no federal collateral estoppel case which has applied this factor. But see Starker v. United States, 602 F.2d 1341 (9th Cir.1979) (overlap of evidence factor is listed generally in collateral estoppel context, but not a consideration in the court's decision)
 
 
 [5]
 "In Mod. 164 the parties settled all claims arising from the performance of Contract 213A except those 'related to defective or nonconforming work accomplished prior to February 28, 1981' that may arise from PDM's failure to implement its quality assurance program properly." PDM I, 876 F.2d at 692-93
 
 
 [6]
 We do not consider the parties' arguments regarding the proper interpretation of this holding because the subject has not yet been decided by the district court. See 28 U.S.C. § 1291
 
 
 [7]
 Subsection 3.1 of Contract 213B, entitled "Contractor's Liability for Damages" provides in part,
 Contractor's liability under this Contract shall not include losses to Owner or others which result from the loss of power production at the Project, including the loss of revenue by the Supply System, its Participants or the Bonneville Power Administration, or the cost of replacement power purchases by any of these as the result of such loss of production.
 Any consequential damages whatsoever are specifically excluded from contractors [sic] responsibility.
 (Emphasis added).
 
 
 [8]
 WPPSS is not bound by the district court's 1986 M & O on this issue because that decision was based on breach of warranty, not breach of contract, considerations
 
 
 [9]
 Again, WPPSS is not bound by the 1986 M & O on this issue because it was based on the court's consideration of damages available under 213B's breach of warranty, not breach of contract, claims