**In re L. Darrell BEVAN; Patricia F. Bevan, Debtors.**

**L. Darrell Bevan; Patricia F. Bevan, Appellants,**

v.

**Socal Communications Sites, LLC, Appellee.**

No. 02–55090.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 2003.

Filed May 1, 2003.

Simon J. Dunstan, Hughes & Dunstan, LLP, Woodland Hills, CA, for the appellants.

Arnold H. Wuhrman, Law Offices of Arnold H. Wuhrman, Tustin, CA, for the appellee.

Before: BEEZER, FERNANDEZ, and PAEZ, Circuit Judges.

FERNANDEZ, Circuit Judge.

L. Darrell Bevan and Patricia F. Bevan appeal the district court's decision, which affirmed an order of the bankruptcy court allowing a $61,694.50 creditor's claim purportedly held by Socal Communications Sites, LLC. The district court held that Socal became equitably subrogated to the IRS's claim when it eliminated the Internal Revenue Service's right of redemption

in certain property that once belonged to the Bevans, but had been foreclosed upon by Socal. We disagree and reverse.

## BACKGROUND

In November of 1998, the Bevans filed a voluntary petition for bankruptcy pursuant to Chapter 13, Title 11 of the United States Code. Before they filed that petition, the Bevans had become indebted to Socal's predecessor in interest on a deed of trust secured by real property located in Malibu, California ("Malibu property").

In December of 1998, the IRS timely filed its proof of claim in the amount of $60,162.34. The IRS also had a lien on the Malibu property for that amount, but Socal's deed of trust was senior to the IRS's lien. During the pendency of the Chapter 13 case, Socal obtained an order for relief from the automatic stay and foreclosed on the Malibu property. At the trustee's sale, Socal was the successful bidder on the Malibu property. It paid $573,409.40 by bidding in the secured debt.

Although the foreclosure sale eliminated the IRS's lien on the Malibu property, pursuant to 26 U.S.C. § 7425(d)(1) the IRS had the right to "redeem such property within the period of 120 days from the date of such sale or the period allowable for redemption under local law, whichever is longer." It is undisputed that if the IRS had exercised that right of redemption, it was required to pay Socal the full amount that Socal had bid at the foreclosure sale, plus interest and expenses incurred by Socal that exceeded income it had received from the property. See id. § 7425(d)(2); 28 U.S.C. § 2410(d).

Socal wanted none of that. It wanted to keep what it had gained in the foreclosure

sale and, therefore, obtained a release of the IRS's right of redemption by paying the sum of $61,694.50. Because the taxes owed by the Bevans were then paid in full, the IRS amended its claim in the Bevans' bankruptcy to the sum of zero. But that was not the end of the saga.

Socal then filed a request for issuance of notice of transfer of claim pursuant to Federal Bankruptcy Rule 3001(e) and requested that the clerk of the bankruptcy court issue a notice stating that the IRS's claim, in the amount of $0, was transferred to Socal. The clerk did so. Then, Socal filed an amended proof of claim asserting that it was entitled to have the zero amount raised to the amount of $61,694.50, which happened to be the amount it paid to obtain the release of the right of redemption. When the Bevans objected to that maneuver, Socal claimed it was now equitably subrogated to the rights of the IRS and could require reimbursement from the Bevans' estate. The bankruptcy court agreed with Socal. So did the district court. This appeal followed.

## JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 158(a). In general, we have jurisdiction pursuant to 28 U.S.C. § 158(d). The Bevans, however, assert that we do not have jurisdiction because the case is moot. What the Bevans claim is that the dismissal of their Chapter 13 case, which was affirmed by us,[1] mooted all proceedings, including the approval of Socal's claim. They are wrong.

It is true that if an issue is closely connected to the reorganization process itself, it will be mooted when the proceeding is dismissed. See *Spacek v. Thomen*

---

1. See Socal Communications Sites, LLC v. Bevan (In re Bevan), 38 Fed.Appx. 465 (9th Cir. 2002).

*(In re Universal Farming Indus.)*, 873 F.2d 1334, 1335 (9th Cir.1989). But that is far from saying that all decisions of the bankruptcy court are mooted simply because they touch on the bankruptcy proceeding or were adjudicated in it. Indeed, we have declared that even contentions about priority of claims on bankruptcy property are not mooted by dismissal. *Id.* And, perhaps more to the purpose, we have decided that "the allowance or disallowance of 'a claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata.'" *Siegel v. Fed. Home Loan Mortgage Corp.*, 143 F.3d 525, 529 (9th Cir.1998) (citation omitted); *see also Florida Peach Corp. v. Comm'r*, 90 T.C. 678, 684, 1988 WL 31439 (1988). Were we to affirm, the bankruptcy court's decision would have a res judicata effect that the Bevans would have to confront now that their estate has revested in them. *See Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.)*, 699 F.2d 963, 965 (9th Cir.1982). Thus, the case is not moot, and we retain jurisdiction over it.

### STANDARD OF REVIEW

■ "We do not give deference to the district court's decision or determinations. However, we review the bankruptcy court's conclusions of law de novo and uphold its findings of fact unless they are clearly erroneous." *Figter Ltd. v. Teachers Ins. & Annuity Ass'n of Am. (In re Figter Ltd.)*, 118 F.3d 635, 637–38 (9th Cir.1997) (citations omitted).

### DISCUSSION

■ The Bevans argue that this was not, by any stretch of the imagination, a proper case for equitable subrogation. We agree. Without intending to be unduly tautological, we note that the doctrine is an equitable one and should only be applied for the purpose of achieving equity. But perhaps we are getting slightly ahead of ourselves.

■ We have described the doctrine this way:

> Equitable subrogation is generally appropriate where (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder.

*Mort v. United States*, 86 F.3d 890, 894 (9th Cir.1996). Based on that, we have held that a person who pays off a prior lien may be equitably subrogated to the position of the prior lienholder as against a later lienholder. *See id.* There is equity in that; there is none here.

■ Socal did not pay off a prior lien on the Malibu property and then seek to be subrogated to the position of the prior lienholder. Quite the contrary. What Socal did was purchase the Bevans' property at a nonjudicial foreclosure sale of its own deed of trust by bidding in the amount that it was owed. That made it much like the volunteer referred to in *Mort. Id.; see also Fid. Nat'l Title Ins. Co. v. United States Dep't of the Treasury, IRS*, 907 F.2d 868, 870 (9th Cir.1990). When it foreclosed, Socal eliminated the IRS's tax lien on the property because that lien was a junior encumbrance. But Congress, out of concern for both the fisc and the taxpayer in question (here the Bevans), has conferred upon the IRS a right of redemption when property is foreclosed upon. *See* 26 U.S.C. § 7425(d). That meant that if the IRS believed that the property was worth more than Socal paid for it at the foreclo-

sure sale plus net expenses to date, the government could redeem the property for that amount and, thus, make Socal whole by seeing that it received every penny to which it was entitled. The IRS would then be in a position to sell the property, pay off the tax owed by the Bevans in whole or in part, and remit any excess to them.

Socal, however, did not cotton to that result. It, we suppose, decided that the property was such a good buy that it could afford to dissuade the IRS from exercising its redemption rights by paying the full amount of the Bevans' taxes. That it did, and, thus, freed itself to capture any added value in the property.

But in so doing, Socal was even more of a volunteer. More importantly—much more importantly—if Socal were to succeed here, it would entirely frustrate the purpose of the redemption statute, which we have described as follows:

> Thus, to prevent a potential windfall to a foreclosure purchaser, the IRS can repay the purchaser the purchase price and sell the property at closer to fair market value. All excess profit then accrues for the benefit of the taxpayer— to pay off the taxpayer's tax liability. The IRS's redemption right protects the taxpayer, who would otherwise be liable to the IRS for unpaid taxes but, under [the creditor's] construction, would have lost the excess profit from the sale of his or her real property.

*Vardanega v. IRS,* 170 F.3d 1184, 1186–87 (9th Cir.1999).

Nothing could be more inequitable than allowing Socal to now mulct the Bevans for the amount it paid to the IRS in order to eliminate that taxpayer benefit. The bankruptcy court should never have countenanced that result; we will not.[2]

## CONCLUSION

We need not be hierophantic to divine the fact that Socal preferred keeping the Malibu property to receiving the full amount owed by the Bevans. So be it. But, considering Congress's beneficent purpose in conferring a right of redemption upon the IRS, we also need not be rhadamanthine to decide that it would be inequitable to permit Socal to "get a windfall at the expense of" the Bevans. *Vardanega,* 170 F.3d at 1187. In fine, Socal's claim should have been rejected by the bankruptcy court.

REVERSED.

---

**2.** The Bevans also object to Socal's use of bankruptcy court procedure to have the IRS's claim, which had been reduced to zero because the IRS was not owed any more taxes, transferred to Socal itself, and then to have that claim amended to the amount that it paid to the IRS. While unnecessary to our conclusion, we agree with the Bevans about that stratagem. No doubt, transfer of claims can be proper. *See* Fed. R. Bankr.P. 3001(e)(2). No doubt, a proof of claim can be amended where the opposing party will not be unduly prejudiced. *See Roberts Farms Inc. v. Bultman, (In re Roberts Farms Inc.),* 980 F.2d 1248, 1251 (9th Cir.1992). For reasons we have already spelled out, undue prejudice would result from approval of Socal's actions here.