Filed 1/15/16  Corona Commerce Center v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| CORONA COMMERCE CENTER, L.P., | |
| Petitioner, | E063470 |
| v. | (Super.Ct.No. RIC1117414) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| EDWARD M. THOMAS et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Daniel A. Ottolia, Judge.  Petition is granted.

Law Offices of Stuart A. Katz, and Stuart A. Katz; Tullius Law Group, and Jennifer R. Tullius for Petitioner.

No appearance for Respondent.

1

Law Offices of Linda E. O'Brien, and Linda E. O'Brien for Real Parties in Interest.

The question before this court is whether a debtor can file for bankruptcy, obtain a court order fixing a creditor's right to recovery at far less than the amount claimed *pursuant to a specific bankruptcy statute*, exit bankruptcy via a voluntary dismissal, and still claim the benefit of the order for reduced recovery when the creditor sues for the full amount due? We find the debtor cannot do so.

STATEMENT OF FACTS

The facts of the matter are not complex. Petitioner Corona Commerce Center, L.P. (Corona) leased commercial property to Thomas Management, Inc. in 2005 for a 10-year term. Edward and Wendy Thomas, defendants in the matter below and real parties in interest here, guaranteed payment of rent on behalf of Thomas Management, Inc. (TMI).

The complaint alleges that TMI defaulted in 2011 and claims unpaid rent of $303,266.81. TMI then filed for bankruptcy. Hence, Corona elected to proceed against the Thomases as guarantors.

After the complaint was filed, apparently in September 2012, the Thomases filed a Chapter 11 proceeding in the Bankruptcy Court, and the California action was accordingly stayed.

On or about July 11, 2014, however, the Thomases dismissed the bankruptcy, which had the effect of terminating the stay of the California action. Thereafter, in January 2015, Corona moved for summary judgment or adjudication of its right to the unpaid rent claimed.

In this motion Corona explained that TMI's obligation to Corona was fixed at $96,153.34 pursuant to title 11 United States Code section 502(b)(6) (see *infra*) and TMI had eventually paid Corona 10 percent of that sum as a pro-rata distribution to its creditors. Corona also acknowledged that the Thomases had obtained an order under the same statute in *their* bankruptcy, which resulted in an order that their obligations to Corona were $96,153.34 less credit for the amount paid by TMI, for a reduced total of $86,538. As the Thomases had paid the latter amount, Corona claimed only the remaining amount of its original claim, as augmented by expenses, interest, etc. and reduced by rents received from a new tenant, for a current total of $230,641.61.

Implicit in these calculations was Corona's position that because the Thomases had not completed bankruptcy, but had dismissed the petition, the bankruptcy court's application of title 11 United States Code section 502(b)(6) to fix the Thomases' obligation to Corona was ineffective.

The Thomases in response below argued that the bankruptcy order is in fact binding and prevents any further recovery. The Thomases also raised challenges to the competency of Corona's evidence which the trial court apparently rejected. However, it

agreed with the Thomases' contention that the bankruptcy court order that limited the Thomases' liability was binding on Corona through a theory of collateral estoppel.

This petition followed.

DISCUSSION

Title 11 United States Code section 502 governs objections to claims filed by a creditor of the bankrupt. It allows an objection to be made on the basis that a lessor's claim for damages for the termination of a real property lease "exceeds—[¶] (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—[¶] (i) the date of the filing of the petition, and [¶] (ii) the date on which such lessor repossessed or the lessee surrendered, the leased property; plus [¶] (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates." (11 U.S.C. § 502(b)(6).) Thus, a lessor such as Corona whose lease included a full acceleration clause extending years into the future from the time of default or bankruptcy filing, cannot recover all sums due under the lease. The purpose of the statute is to allow the landlord fair compensation for the breached lease while preventing a claim for future unpaid rent from eating up a disproportionate part of a bankrupt's estate. (*In re Gantos, Inc.* (Bankr. W.D. Mich. 1995) 176 B.R. 793, 795.)

There is no question that if the Thomases had completed bankruptcy proceedings and been discharged, Corona's current claim would be barred. The issue here is not quite so simple.

4

In the bankruptcy action, in which Corona had vigorously participated in opposition to the Thomases' attempt to limit its recovery, the court entered a dismissal order which simply grants their motion to dismiss. It is not entirely clear what the court intended. In their motion to dismiss, the Thomases only sought the relief of dismissal. After Corona objected, the Thomases filed a reply in which they specifically asked the court to rule that its order limiting Corona's recovery would be "binding and conclusive on all parties notwithstanding the dismissal of this case" and offered an order including language to this effect. That the court did not sign this order, but signed one simply granting dismissal, suggests that it believed that it would be inappropriate to attempt to determine the effect of its rulings in a state court action. However, even if the order granting dismissal was intended to include all relief sought by the Thomases, we would not be obliged to accept it as controlling. We also note that decisions of the lower federal courts are not binding on California courts even on issues of federal law. Furthermore, such a gratuitous statement unrelated to the action or ruling the court was making (the dismissal) is clearly dicta. (*People v. Superior Court (Moore)* (1996) 50 Cal.App.4th 1202, 1211.) Finally, trial courts do not generally create binding precedent in any event. (*In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1176, in dicta.) Hence, we consider the issue afresh.

We agree that we have found no case directly holding that a dismissal effectively dissolves earlier orders and that there are cases, as cited by real parties in interest, that hold that *in the circumstances of those cases*, some orders made during the pendency of a

5

bankruptcy remain binding even if the proceeding is dismissed. None, however, is on point with this case, as we will explain.

The Thomases cite *Bevan v. Socal Communications Sites, LLC* (9th Cir. 2003) 327 F.3d 994 (*Bevan*) for its statement that rulings on claims remain binding despite the later dismissal of proceedings. The ruling involved in *Bevan* was one *fully allowing* a creditor's claim, and the Ninth Circuit noted that despite the dismissal, this order "would have a res judicata effect that the Bevans would have to confront now that their estate has revested in them."[1] (*Id.* at p. 997.) The *Bevan* court cited in this respect its earlier decision in *Siegel v. Federal Home Loan Mortgage Corporation* (9th Cir. 1998) 143 F.3d 525 (*Siegel*), which barred a debtor's attempt to sue a lender for wrongful foreclosure because the debtor had not challenged the lender's proofs of claim filed in the bankruptcy action, and the bankruptcy court, based on these proofs, allowed the lender to foreclose. *Siegel* states that the debtor could have raised the issues concerning the lender's alleged misdeeds as a defense to its claims in the bankruptcy proceeding, and also notes that the tort claims would undermine the rights granted to the creditor by the bankruptcy court. Hence, res judicata applied. (*Id.* at pp. 529-530.) In *Siegel*, the debtor *completed* bankruptcy and was discharged, and thus (unlike *Bevan*) is not analogous to this case.

---

[1] In *Bevan, supra,* 327 F.3d 994, the debtors appealed an order allowing a creditor's claim in a convoluted factual setting. They apparently argued on appeal that their dismissal of the bankruptcy mooted the appeal because it cancelled out the approval order. The appellate court disagreed with this position, but went on to reverse the approval order on other grounds.

6

Real parties in interest, and the trial court, also rely on *Nathanson v. Hecker* (2002) 99 Cal.App.4th 1158 (*Nathanson*), which *was* a dismissal case. There, the Heckers, in a civil suit for damages, refused to respond to Nathanson's discovery request and, when Nathanson filed a motion to compel, the Heckers filed for bankruptcy. (*Nathanson* at p. 1161.) Nathanson then filed a claim for $200,000 in the bankruptcy court; the Heckers objected and the matter was litigated actively. The bankruptcy court allowed Nathanson's claim in the amount of $169,282.36. The bankruptcy was then dismissed, apparently due to the Heckers' failure to cooperate with the trustee. (*Ibid*.)

Back in the civil action, Nathanson moved for summary judgment on the basis of the bankruptcy court's order as establishing the validity of its claim in the amount specified. The Heckers then argued that the dismissal of the bankruptcy prevented the order from having any res judicata effect. However, the appellate court disagreed, citing inter alia the decision in *Siegel*. (*Nathanson, supra,* 99 Cal.App.4th at p. 1163.)

Corona, on the other hand, relies on *Mirzai v. Kolbe Foods, Inc.* (*In re Mirzai*) (C.D. Cal. 2001) 271 B.R. 647 (*Mirzai*). There, the creditor recovered a state court judgment against Mirzai and then filed a proof of claim in the bankruptcy court. Mirzai objected that the creditor was a suspended corporation with no standing. (See Rev. & Tax. Code, § 23302.) The bankruptcy court agreed and disallowed the claim. Mirzai then dismissed the bankruptcy. (*Mirzai*, at p. 650.)

After additional proceedings in state courts, resulting generally unfavorably to Mirzai, the latter again filed for bankruptcy, seeking to enjoin the creditor from enforcing

7

the judgment. The basis was the disallowance of the claim in the *first* bankruptcy. (*Mirzai, supra*, 271 B.R. at p. 651.) However, the district court, sitting in bankruptcy, found that the *disallowance* of a claim had no preclusive effect if the bankruptcy was dismissed rather than proceeding to discharge. It held bluntly that "Mirzai was not entitled to the benefits of bankruptcy without confirmation of a plan or discharge." (*Id*. at p. 654.) The court also commented that a disallowance based on a *procedural* ground (such as the corporate creditor's suspension) was not a judgment on the merits entitled to preclusive effect. (*Ibid*.)[2]

We now examine the precise effect of these decisions. In *Bevan*, which appears to state a rule favorable to real parties in interest, the pertinent statements of the court are only that once a claim is allowed by the bankruptcy court, its validity is not affected by the dismissal of the proceeding. *Siegel,* although it involved a discharge and does not consider the issues before us, makes the same point—that the *debtor* is bound by an order on a claim.

*Nathanson* also presents the situation in which a debtor attempts to avoid the effect of a ruling on the merits of a claim by relying on a subsequent dismissal. The validity of the creditor's claim had been fully litigated and the bankruptcy court evidently found that, as a matter of fact, the debtor owed the creditor a specified amount. The

---

[2] See also *In re Case* (Bankr. D.S.D. 1983) 27 B.R. 844, 847: "Congress did not envision a fresh start for debtors that do not proceed to discharge."

opinion also supports the view that the dismissal was prompted, or related to, the debtor's desire to avoid the effect of the ruling.

Here, in contrast, the order of the bankruptcy court fixing the amount which Corona could collect was based on the application of a specific law integral to the administration of bankruptcy proceedings. It did not represent findings on contested issues of fact which could appropriately be given res judicata effect. It did not determine that real parties in interest only owed Corona "X" dollars, but rather that Corona could only collect "X" dollars from a bankrupt.

Furthermore, real parties in interest are not trying to avoid the effect of an unfavorable ruling. Rather, they are trying to retain the benefits of a *favorable* ruling without actually having gone through bankruptcy. In Nathanson, the court's refusal to find that the dismissal of bankruptcy voided all previous orders was necessary to prevent injustice. The exact opposite is true here: equity requires that the dismissal must be construed to include the Thomases' implicit abandonment of the benefits offered by the bankruptcy laws. To this extent it is *Mirzai* is that relevant and persuasive.

First, title 11 of the United States Code section 502 does not exist in a vacuum. It is not a mechanism by which any debtor who owes money for future rents can receive a determination that only a limited amount of the money due can actually be recovered by the landlord. As we briefly discussed above, the purpose of the statute is not to leave more money in the hands of the debtor, but to prevent a landlord's claim for unpaid future rents from devouring the bankrupt's estate to the detriment or exclusion of *other*

9

*creditors*. Section 502 simply serves as a tool the bankruptcy court uses to effect a fair allocation of available assets among the creditors.

Second, where the debtor attempts to use a ruling as a shield, we agree with *Mirzai* that a debtor is not entitled to the benefits of a bankruptcy court order if the debtor fails to pursue the bankruptcy to a discharge. The completion of a bankruptcy proceeding offers the debtor the benefits of a "fresh start," but also imposes obligations and restrictions[3] as well as the social and economic stigma. The Thomases undertook no legal obligations as a result of the bankruptcy proceeding and need not identify themselves as bankrupts. Instead, they appear to have used the bankruptcy solely to get an adjudication that they were reducing Corona's claim (ineffectively, as we hold) in order to enable them to offer more in settlement to other creditors so that they could avoid bankruptcy. This was inequitable, and we refuse to countenance it.

Third, the bankruptcy court's order was not a determination on the merits that the Thomases only *owed* Corona $86,538. Thus, under *Mirzai* it would not be entitled to preclusive effect in any case. Rather, it was simply a determination that *for the purposes of the bankruptcy*, a specific statute (11 U.S.C. § 502) limited the amount that could be *recovered*.

---

[3] See title 11 United States Court section 727(a)(8)(9), limiting the debtor's ability to seek subsequent bankruptcy relief for a period of years.

10

Real parties in interest point to title 11 of the United States Code section 349(b) which governs, at least to some extent, the effect of a dismissal on prior orders.[4] As real parties in interest point out, an order under section 502(b)(6) is not among the orders listed as being vacated by the dismissal. As we have seen, an order allowing a claim is not automatically vacated by a dismissal, and this is consistent with the omission of such an order from section 349(b)(2). But *Mirzai* and *Case*, concluded that the purposes of title 11 United States Code section 349 are not served by considering the list of "vacated" orders as exclusive. Rather, because the overall intent of the statute is to return matters to the status quo *ante*,[5] certain orders which inure to the benefit of the debtor and the detriment of one or more creditors must also be held ineffective if the debtor does not complete the bankruptcy proceeding. With this approach we agree.

We recognize that our decision may leave the Thomases in a worse position than if they had completed the bankruptcy in that their settlement with the other creditors may have been affected by their belief that the order under title 11 of the United States Code

---

[4] In relevant part that statute provides that "(b) . . . a dismissal of a case . . . [¶] (1) reinstates—[¶] (A) any proceeding or custodianship superseded under section 543 of this title . . . ; [¶] (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title . . . or preserved under section 510(c)(2), 522(i)(2), or 551 of this title . . . ; and [¶] (C) any lien voided under section 506(d) of this title . . . ; [¶] (2) vacates any order, judgment, or transfer ordered under section 522(i)(1), 542, 550, or 553 of this title . . . ; and [¶] (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."

[5] It will be noted that in general, the quoted provisions of section 349 return to the debtor all property originally in the estate, validate transfers which were found suspect in the bankruptcy proceedings, and un-do forced transfers.

11

section 502(b)(6) fixed their obligations to Corona.**6** However, on the record it is impossible to speculate on the overall fairness of the settlement or whether Corona's share of the bankruptcy estate would, had the proceeding been completed, have been lesser or greater. We simply decide the issue presented to us, and hold that where a debtor later seeks dismissal of a bankruptcy proceeding, any order limiting a landlord's recovery under section 502(b)(6) of title 11 of the United States Code is necessarily vacated by the dismissal and does not bind the creditor in a civil action.

This does not quite end the matter, however, because it is not clear from the record whether the court found, or would have found, that Corona's proofs of the actual amounts due, disregarding the bankruptcy order, were sufficient to support judgment. Hence, we will remand and direct the court to reconsider real parties in interest's arguments in this respect before entering an appropriate order otherwise in conformity with this opinion.

DISPOSITION

The petition for writ of mandate is granted. Let a peremptory writ of mandate issue, directing the Superior Court of Riverside County to vacate its order denying petitioner's motion for summary judgment. The court shall then determine whether Corona, by admissible evidence, carried its burden of showing the amounts due and/or whether real parties in interest raised a triable issue of fact in any such respect. If the trial

---

**6** We also recognize that if real parties in interest's financial circumstances are, or remain, in such a parlous state, they may respond to this decision by filing anew in the bankruptcy court, potentially leading to the same order under section 502(b)(6) of title 11 of the United States Code.

12

court determines that Corona is entitled to summary judgment in an established monetary amount, it shall so order. If it finds triable issues of fact on the amount due, it may deny the motion for summary judgment, but this opinion shall be law of the case in any subsequent proceeding. (See *People v. Murtishaw* (2011) 51 Cal.4th 574, 597-598.)

Petitioner to recover its costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

HOLLENHORST
Acting P. J.

KING
J.