NOT FOR PUBLICATION



FILED

MAY 26 2021

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re:<br>JOHN CHRISTIAN LUKES,<br>        Debtor. | BAP No. CC-20-1236-LFT<br><br>Bk. No. 1:19-bk-11902-VK |
| SALISBURY LEE & TSUDA, LLP,<br>        Appellant,<br>v.<br>JOHN CHRISTIAN LUKES,<br>        Appellee. | **MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Central District of California
Victoria S. Kaufman, Bankruptcy Judge, Presiding

Before: LAFFERTY, FARIS, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

The law firm of Salisbury, Lee & Tsuda, LLP ("SLT") appeals the
bankruptcy court's order disallowing its second amended claim filed in
debtor John Lukes' chapter 11[1] case. The bankruptcy court sustained
Debtor's objection to the claim based on its interpretation of a settlement

---

* This disposition is not appropriate for publication. Although it may be cited for
whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential
value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal

agreement among Debtor, his spouse, and SLT (the "Settlement Agreement"). Although the chapter 11 case has been dismissed, this appeal is not moot. And we agree with the bankruptcy court's conclusion that the Settlement Agreement released Debtor's liability for the attorneys' fees asserted in SLT's second amended proof of claim, as well as those accruing through January 1, 2020, based on the language of the Settlement Agreement, which released "all liabilities associated with child support and spousal support orders made in favor of Mrs. Lukes to the extent such liabilities have accrued through January 1, 2020." We therefore AFFIRM.

## FACTS

In April 2019, in connection with a contentious dissolution proceeding between Debtor and his wife, Kathryn A. Lukes, the Los Angeles County Superior Court entered an order ("Fee Order") requiring Debtor to pay attorneys' fees and costs of $150,000 to SLT, Mrs. Lukes' dissolution counsel, pursuant to California Family Code § 2030. Shortly thereafter, SLT recorded in Los Angeles County an abstract of judgment referencing the Fee Order.

Debtor filed a chapter 11 petition on July 29, 2019. Mrs. Lukes filed a proof of claim (No. 14) in which she asserted a secured claim of $100,579.79 for court-ordered child support, spousal support, and arrears. SLT filed a proof of claim (No. 13) in which it asserted a priority secured claim of $152,621.77 based on the Fee Order. A week later, SLT filed an amended

Rules of Bankruptcy Procedure.

2

proof of claim, asserting a total claim of $326,129.14. As in the initial proof of claim, SLT asserted a secured claim of $152,621.77, but added an unsecured claim of $173,507.37. The description of the basis for the claim read: "Money judgment ($152,621.77) and legal fees on behalf of debtor's spouse Kathryn A. Lukes prior to [the petition date] which may become an obligation of debtor[.]"

In January 2020, Debtor, Mrs. Lukes, and SLT entered into the Settlement Agreement. Under the agreement, Debtor was to pay Mrs. Lukes $100,579.79 in satisfaction of her proof of claim no. 14, plus additional amounts to cure postpetition spousal and child support arrears through January 14, 2020. In exchange, Mrs. Lukes was to withdraw her proof of claim, reconvey her liens, and report to the family law court that Debtor was current on his liabilities as of January 1, 2020.

With respect to SLT, paragraph 2.2.1 of the Settlement Agreement provided "[t]he Debtor shall pay SLT $152,622 in settlement of its POC No. 13," after which SLT would withdraw its proof of claim and reconvey its liens.

In exchange, Mrs. Lukes and SLT agreed to "relieve, release and forever discharge the Debtor, from all liabilities associated with the [Fee Order] and all liabilities associated with child support and spousal support orders made in favor of Mrs. Lukes to the extent such liabilities have accrued through January 1, 2020." No party objected, and the bankruptcy

3

court approved the Settlement Agreement. On February 27, 2020, SLT was paid $152,652.33.[2]

The next day, SLT again amended its proof of claim, eliminating the secured portion of $152,621.77 but continuing to assert an unsecured claim of $173,507.37 based on "[l]egal fees on behalf of debtor's spouse Kathryn A. Lukes prior to 7/29/19 not yet liquidated and subject to court approval."

Debtor filed an objection to SLT's amended claim, arguing that it should be disallowed based on the language in the Settlement Agreement requiring SLT to withdraw its proof of claim upon receipt of $152,652.33.[3] SLT filed a response in which it asserted that the Settlement Agreement released only the attorneys' fees awarded by the Fee Order.

After a hearing, the bankruptcy court sustained Debtor's objection and entered an order disallowing SLT's second amended claim.[4] SLT timely appealed.

---

[2] Mrs. Lukes was also paid the amount of her secured claim, and she withdrew her claim no. 14.

[3] Debtor also argued that the claim was unenforceable because the fees being claimed had not yet been awarded by the superior court, and there was no documentation attached to the amended proof of claim to support the fees requested.

[4] SLT's counsel's telephone access was disrupted shortly before the end of the September 17 hearing, cutting off certain arguments he made, and thus they do not appear in the transcript. SLT has moved to augment the record with a Statement of Evidence on Appeal ("SOE") pursuant to Rule 8009(c), which Debtor did not oppose. But SLT did not obtain bankruptcy court approval of the SOE as required under Rule 8009(c). In any event, the arguments SLT asserts were made but not preserved in the hearing transcript are adequately covered in SLT's appellate briefing. The motion to augment is DENIED.

During the pendency of this appeal, Debtor and the United States Trustee stipulated to dismissal of the chapter 11 case, and the bankruptcy court dismissed the case on February 2, 2021.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(K). And despite the dismissal of the underlying bankruptcy case, we have jurisdiction under 28 U.S.C. § 158.

Dismissal of a bankruptcy case does not necessarily moot all decisions made during the pendency of the case. *Bevan v. Socal Commc'ns Sites, LLC (In re Bevan)*, 327 F.3d 994, 997 (9th Cir. 2003). Specifically, where a decision whether to allow or disallow a claim could have preclusive effect in future litigation, an appeal of that decision is not moot. *Id.* Here, the bankruptcy court interpreted the Settlement Agreement as releasing Debtor's liability for attorneys' fees incurred by Mrs. Lukes through January 1, 2020. This interpretation is potentially preclusive in a future family court proceeding. Accordingly, the appeal is not moot.

## ISSUE

Did the bankruptcy court err in sustaining Debtor's objection to SLT's proof of claim?

## STANDARD OF REVIEW

In the claim objection context, we review the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). Here, the

bankruptcy court's ruling was based entirely on its interpretation of the Settlement Agreement, which is a question of law that we review de novo. *See Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1064 (9th Cir. 2002). When we conduct a de novo review, "we look at the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered, giving no deference to the bankruptcy court's determinations." *Charlie Y., Inc. v. Carey (In re Carey)*, 446 B.R. 384, 389 (9th Cir. BAP 2011).

## DISCUSSION

The bankruptcy court sustained Debtor's objection because it interpreted the Settlement Agreement as releasing Debtor from liability for attorneys' fees incurred by Mrs. Lukes through January 1, 2020. In construing the Settlement Agreement, we must do so "in a manner that gives full meaning and effect to all of the contract's provisions and avoid a construction of the contract that focuses only on a single provision . . . ." *Beal Bank v. Crystal Props., Ltd., L.P. (In re Crystal Props., Ltd., L.P.)*, 268 F.3d 743, 748 (9th Cir. 2001).

Although SLT urges this Panel to heed the foregoing rule of construction, SLT advocates for a reading of the Settlement Agreement that focuses solely on the release paragraph (¶ 2.3) and ignores the other provisions of the agreement. SLT points out that the agreement provided for two separate settlements, and argues that one settlement released Debtor's liability to SLT for the fees awarded in the Fee Order, and the

6

other released his liability to Mrs. Lukes for spousal and child support only, through January 1, 2020.

To begin, even if we look solely to the release paragraph, it provides for the release of "all liabilities associated with" domestic support obligations accruing through January 1, 2020. Those liabilities may include attorneys' fees, which, at least initially, would be Mrs. Lukes' obligation. SLT seems to assume that such fees would automatically become Debtor's obligation, i.e., a direct obligation from Debtor to SLT, enabling SLT to assert a claim in the bankruptcy or pursue Debtor directly for the fees. But Debtor would become liable for the fees only upon order of the superior court pursuant to California Family Code § 2030.[5] It is thus reasonable to read "all liabilities" associated with child or spousal support as including attorneys' fees.

Construing the Settlement Agreement as releasing Debtor's liability for attorneys' fees through January 1, 2020, is bolstered by SLT's agreement to withdraw its proof of claim, which is defined in the Settlement Agreement as "POC No. 13" and is described in paragraph 1.2 of the agreement as an "amended Proof of Claim." The amended proof of claim no. 13 on file at the time of the settlement included an unsecured claim of $173,507.37 in unliquidated legal fees; those fees had not been adjudicated to be Debtor's liability, as acknowledged in the claim. The Settlement

_____

[5] That statute requires the court to make findings as to the respective parties' abilities to pay attorneys' fees and costs and to order one party to pay another's fees and

7

Agreement did not provide for SLT to **amend** its proof of claim but to **withdraw** it. For us to accept the interpretation urged by SLT, we would have to ignore SLT's agreement to withdraw its proof of claim. Withdrawal would have eliminated the claim in its entirety. And given that the claims bar date had passed, SLT could not have asserted a new claim.

We note that with respect to the settlement with Mrs. Lukes, paragraph 2.1.3(a) of the agreement provided that once she received the required payment from Debtor, she would "[w]ithdraw her POC from the Bankruptcy Case, except as to current child support amounts accruing on or after January 15, 2020." This provision demonstrates that SLT took care to draft the terms portion of the Settlement Agreement (not just the release paragraph) to protect Mrs. Lukes' right to postpetition support accruing after the specified date; that it failed to do the same with its unsecured claim for prepetition attorneys' fees supports the conclusion that the omission was intentional.

SLT also argues that the bankruptcy court should have entertained evidence of intent, but the court found the Settlement Agreement susceptible of only one interpretation.[6] In any event, the claim objection

---

costs in accordance with those findings.

[6] The agreement contains an integration clause. The California parol evidence rule "generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343 (2004) (quoting *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1433 (1992)). Still, extrinsic evidence may be introduced to explain the meaning of a written contract if "the meaning urged is one to which the written

was not the first time the bankruptcy court had considered the Settlement Agreement. The court had approved the agreement, presumably based on its interpretation of the terms at issue in this appeal. And the bankruptcy court's interpretation makes sense because, without the release of attorneys' fees other than those explicitly awarded by the superior court, Debtor would have received virtually no consideration in the settlement.

## CONCLUSION

Because the bankruptcy court did not err in its interpretation of the Settlement Agreement, it did not err in sustaining Debtor's objection to SLT's claim. Accordingly, we AFFIRM.

---

contract terms are reasonably susceptible." *Id.* (quoting *BMW of N. Am., Inc. v. New Motor Vehicle Bd.*, 162 Cal. App. 3d 980, 990 n.4 (1984)).