**Robert VARDANEGA, Plaintiff–Appellant,**

v.

**INTERNAL REVENUE SERVICE, Defendant–Appellee.**

No. 97–17301.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 1999.

Decided March 19, 1999.

Paul H. Greisen, Greisen Law Corporation, Fair Oaks, California, for plaintiff-appellant.

William S. Estabrook, Murray S. Horwitz, Charles F. Marshall, Tax Division, United States Department of Justice, Washington, DC, for defendant-appellee.

Before: WOOD,[1] THOMPSON, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

Robert Vardanega appeals a decision of the U.S. District Court for the Eastern District of California. The district court in this case granted summary judgment in favor of the Internal Revenue Service ("IRS") in Vardanega's action to quiet title in real property. Vardanega argued below that 26 U.S.C. § 7425 permits the IRS to redeem only the exact property interest on which it has a tax lien. The district court disagreed and held that the statutory language of § 7425 permits the IRS to redeem the entire real property on which it has a lien that is purchased at a foreclosure sale. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm the decision of the district court.

I

In 1991, Donna Benedetti, Cathleen Benedetti, and Dorothy Wildes acquired property at 821 Carsten Circle in Solano County, California (the "Carsten property") as coequal joint tenants. In February 1993, the three owners obtained a loan on the property secured by a properly recorded deed of trust. In June 1995, the IRS filed notice of a tax lien in Solano County against Donna Benedetti for unpaid taxes in the amount of $46,595.26.

Windsor Management Company, the trustee for the deed of trust, foreclosed on the Carsten property pursuant to California law and notified the IRS of the impending sale. In December 1996, Vardanega purchased the Carsten property for $105,881.47 at the trustee's foreclosure sale. He had actual knowledge of the IRS's tax lien. On April 14, 1997, the IRS redeemed the Carsten property by sending a check to Vardanega for $107,970.09, the amount that he paid for the Carsten property plus statutory interest.

Although Vardanega was aware of the IRS's tax lien, he believed that the IRS could redeem only the property interest against which it had a tax lien, i.e., Donna Benedetti's one-third, undivided interest, and he attempted to return to the IRS two-thirds of the amount of the check it had sent him. The IRS rejected the payment and recorded a certificate of redemption.

On May 16, 1997, Vardanega brought suit against the IRS to quiet title in the Carsten property and for partition, seeking a two-thirds, undivided interest. A few days later, the IRS sold the entire Carsten property to the GH–A Corporation for $172,300.00. Both Vardanega and the IRS filed motions for summary judgment, and on November 7, 1997, the district court granted summary judgment for the IRS.

II

 When interpreting a statute, we first look to the plain language of the statute to interpret its provisions. "In statutory interpretation, the starting point is always the language of the statute itself." *Jeffries v. Wood,* 114 F.3d 1484, 1494 (9th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 586, 139

---

1. The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

L.Ed.2d 423 (1997). If the language is clear, there is no need to look any further. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

■ In this case, the statute plainly and unambiguously allows the IRS to redeem the entire real property that was sold at a foreclosure sale if any portion of the real property was subject to a federal tax lien prior to the foreclosure sale.

Section 7425(d) states:

In the case of a sale of real property ... to satisfy a lien prior to that of the United States, the Secretary may redeem such property within the period of 120 days from the date of such sale or the period allowable for redemption under local law, whichever is longer.

26 U.S.C. § 7425(d) (1994).

Vardanega argues that the term "such property" in the statute refers to the property interest on which the government has a tax lien. However, this would require a strained construction of the statute. The statute refers to "real property" which is sold, then provides for redemption of "such property." If Congress had intended to limit redemption to only a portion of the property, it could have stated so explicitly. By its terms, section 7425 allows the IRS upon redemption to step into the shoes of the foreclosure purchaser, not those of the delinquent taxpayer. *See* 26 U.S.C. § 7425(d)(3)(C) (1994) (stating that when the certificate of redemption is recorded, the United States obtains all the "rights, title, and interest in and to such property acquired by the person from whom the United States redeems such property by virtue of the sale of such property"); *see also Olympic Fed. Sav. & Loan Ass'n v. Regan,* 648 F.2d 1218, 1220 (9th Cir.1981) ("[T]he Service takes the interest that the redemptionee acquired at the execution sale.").

The statutory amount that the IRS is required to pay to the purchaser upon redemption also supports our holding. In order to redeem real property, the United States must pay the amount paid by the purchaser, plus interest and other costs. *See* 28 U.S.C. § 2410 (1994) ("In any case in which the United States redeems real property ... the amount to be paid for such property shall be the sum of ... the actual amount paid by the purchaser at such sale"). Section 2410's requirement that the IRS pay the entire purchase price compels our conclusion that the IRS redeems the whole property and not the equivalent of its tax lien.

The legislative history also supports this interpretation. The Senate Report issued upon the passage of 26 U.S.C. § 7425(d) discusses the IRS's right of redemption. *See* S.Rep. No. 1708, *reprinted in* 1966 U.S.C.C.A.N. 3722. The Report states that when the government invokes its right to redeem, "it must pay the amount paid by the purchaser at the sale plus interest and expenses necessary to maintain the property from the time of sale." *Id.* at 3750. It would be anomalous and quite expensive if the government was required to pay the *entire amount* paid by the purchaser but could not redeem the *entire property* purchased by the purchaser.

The Senate Report also discusses Congress's purpose in granting the IRS a right of redemption under § 7425: "[T]he Government can purchase property sold at distress prices and resell the property at a profit. This profit, of course, is applied in satisfaction of the taxpayer's liability.... [T]he exercise of this power, where the redeemed property is sold at a profit, inures to the benefit of delinquent taxpayers." *Id.* at 3753. Congress intended the redemption statute to prevent foreclosure purchasers from buying real property for less than the fair market value and then selling the real property and keeping the profit. Instead, Congress intended that any excess profit, after all prior liens were satisfied, to inure to the benefit of the taxpayer. *See id.; Delta Sav. & Loan Ass'n v. IRS,* 847 F.2d 248, 251 (5th Cir.1988). Thus, to prevent a potential windfall to a foreclosure purchaser, the IRS can repay the purchaser the purchase price and sell the property at closer to fair market value. All excess profit then accrues for the benefit of the taxpayer-to pay off the taxpayer's tax liability. The IRS's redemption right protects the taxpayer, who would otherwise be liable to the IRS for unpaid taxes but, under Vardanega's construction, would

have lost the excess profit from the sale of his or her real property.[2]

Finally, a number of cases illuminate the general scheme of § 7425 and buttress our holding in this case. *See, e.g., Little v. United States,* 794 F.2d 484, 490 (9th Cir.1986) (holding that the property interest redeemed by the government was equivalent to that held by the purchaser after the foreclosure sale); *Meek v. United States,* 26 Cl.Ct. 1357, 1358, 1361 n. 5 (1992) (noting that, after the IRS redeemed real property on which it had a lien against one of the owners, the IRS owned the entire property because the foreclosure sale included the property interests of both owners), *aff'd by,* 6 F.3d 788 (Fed.Cir. 1993) (unpublished mem.).

■ Vardanega confuses two distinct IRS proceedings. If the IRS had levied on the Carsten property under 26 U.S.C. § 6331, the IRS's rights would be different. A § 6331 levy "does not determine whether the Government's rights to the seized property are superior to those of other claimants." *United States v. National Bank of Commerce,* 472 U.S. 713, 721, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). Instead, under § 6331 the "IRS steps into the taxpayer's shoes" and has "whatever rights the taxpayer himself possesses." *Id.* at 725, 105 S.Ct. 2919 (citations and internal quotation marks omitted). In such a situation, the IRS would step in and obtain only Donna Benedetti's one-third, undivided interest. In the case of redemption under § 7425, however, the IRS steps into Vardanega's shoes as long as it pays him the full purchase price.

### III

■ We also reject Vardanega's argument that the redemption statute itself constitutes a taking in violation of the Fifth Amendment. *See Bank of Hemet v. United States,* 643 F.2d 661, 666 (9th Cir.1981); *Meek,* 26 Cl.Ct. at 1366. When Vardanega purchased the Carsten property, he purchased it with notice

of an encumbrance-the statutory right of redemption by the United States, codified in 1966. Therefore, he did not purchase clear title to fee property, but property encumbered by a right of redemption. By exercising its statutory right of which Vardanega had notice, the IRS did not divest him of any vested property interest in violation of the Fifth Amendment.

Further, Vardanega was reimbursed for all of the money that he spent to purchase the Carsten property. What he "lost" was the right to get a windfall at the expense of the taxpayer and the other joint tenant owners of the Carsten property. Full compensation for property does not an unlawful taking make.

### IV

■ Vardanega also challenges the wording of the certificate of redemption because it refers to the taxpayer's interest in the property. Although the wording could have been more precise, it suffices to express the intent of the United States to redeem the entire Carsten property, particularly coupled with a tender of the full purchase price.

■ Moreover, this argument misapprehends the function of a redemption certificate. A certificate of redemption "serves merely to evidence that redemption occurred and to transfer legal title of the redeemed interest." *Southwest Prods. Co. v. United States,* 882 F.2d 113, 118 (4th Cir.1989). Redemption is completed by tender of a check to the purchaser for the purchase price. *See id.* at 117. At that point, not at the time of the certificate filing, the IRS steps into the shoes of a purchaser and acquires the purchaser's interest.

In this case, redemption was complete when the IRS sent the full purchase price to Vardanega. Because the IRS sent Vardanega the amount that he paid for the Carsten

---

**2.** The taxpayer's statutory right of redemption is instructive. Under 26 U.S.C. § 6337, a delinquent taxpayer has a right of redemption when her property is sold at a tax sale by the IRS. *See* 26 U.S.C. § 6337 (1994). This statute provides that not only the taxpayer, but her "heirs, executors, or administrators, or any person having any interest [in the property sold] shall be permitted

to redeem the property sold ... within 120 days." *Id.* It follows that the United States, pursuant to § 7425, can redeem property in which it has a partial interest, in the same manner that property sold in a tax sale by the IRS can be redeemed by a person with only a partial interest in foreclosed property.

property, the IRS redeemed the entire Carsten property.

Accordingly, we affirm.

AFFIRMED.