**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM JEFFERSON & CO., INC.,
    *Plaintiff-Appellant,*

v.

BOARD OF ASSESSMENT AND APPEALS
NO. 3 FOR ORANGE COUNTY and
STATE OF CALIFORNIA,
    *Defendants-Appellees.*

No. 11-55223

D.C. No.
8:09-cv-00849-
DOC-RNB

OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
June 8, 2012—Pasadena, California

Filed August 29, 2012

Before: Betty B. Fletcher and Kim McLane Wardlaw,
Circuit Judges, and John A. Mendez, District Judge.*

Opinion by Judge B. Fletcher

---

*The Honorable John A. Mendez, District Judge for the U.S. District
Court for the Eastern District of California, sitting by designation.

## COUNSEL

William A. Kent, Esq. (argued), Irvine, California, for plaintiff-appellant William Jefferson & Co., Inc.

William L. Haluck (argued) and Ashley N. Coleman, Koeller, Nebeker, Carlson & Haluck, LLP, Irvine, California, for defendant-appellee Assessment Appeals Board for Orange County.

**OPINION**

B. FLETCHER, Circuit Judge:

William Jefferson & Co., Inc. ("William Jefferson") lost a state administrative appeal in which William Jefferson challenged the Orange County Tax Assessor's ("Assessor") valuation of a parcel of real property. William Jefferson then filed suit in federal district court, alleging that its procedural due process rights were violated in the course of the administrative appeal hearing. We affirm the district court's conclusion that the state administrative appeal did not deny William Jefferson procedural due process. In a separate memorandum disposition filed concurrently with this opinion, we affirm the lower court's grant of the agency's motion for a protective order and its denial of class certification.

**I**

William Jefferson owns a parcel of real property located in Orange County, California. William Jefferson disputed the Assessor's valuation of that property and assessment of state property taxes. William Jefferson appealed the Assessor's determination to the Assessment Appeals Board for Orange County ("Board"). The Board denied, on statute of limitations grounds, William Jefferson's administrative appeal. The merits of the Board's decision are not relevant here.

The Assessor was represented at the administrative hearing by James C. Harmon. Paula Whaley advised the Board. Both Harmon and Whaley are attorneys who work for the County Counsel for Orange County, the county's public law office. William Jefferson alleges that because the Board was advised by one member of the Orange County Counsel's office, and the Assessor was represented by another member of that office, the hearing did not comply with the requirements of due process. The Orange County Counsel's "dual representa-

tion" of the Board and the Assessor is expressly authorized by California Government Code § 31000.7.

William Jefferson filed suit in federal district court arguing that the hearing procedures employed by the Board violated William Jefferson's procedural due process rights under the Fourteenth Amendment and seeking relief under 42 U.S.C. § 1983. At a brief bench trial, Whaley, Harmon, and the clerk for the Board testified regarding the procedures that the Orange County Counsel's office employed to avoid improper exchange of information between attorneys who represent the Board and those who represent the Assessor. Harmon and Whaley also testified about their conduct with respect to the William Jefferson case in particular.

The district court issued twenty-three findings of fact. The district court found that Whaley was a member of the County Counsel's "advisory" section, while Harmon was a member of the "litigation" section. In the William Jefferson case, Whaley's duties included reviewing the parties' briefs to the Board, attending the hearing, observing the Board's deliberations, advising the Board on the applicable law, and preparing the written findings of fact memorializing the Board's decision. The district court found that Whaley "did not have, and did not seek to exercise, any discretionary authority in drafting the findings of fact."

The district court found that "[t]he County Counsel's office takes diligent measures to separate the members of its advisory section from the members of its litigation section." These include maintaining a separate "doored-off" work space for members of the advisory section and a locked file cabinet for all documents relating to advising the Board. Both Whaley and Harmon had received training on the County Counsel's procedures for maintaining an "ethical wall" between the advisory and litigation sections. The district court found that due to the County Counsel's procedures and Whaley's own "diligence in observing the office's ethical rules, [she] had no

formal or informal contact with Mr. Harmon during the pendency of the [William Jefferson] appeal."

The district court found that Whaley had never represented the Assessor and that Harmon played no direct or indirect role in Whaley's professional reviews or advancement in the County Counsel's office. Whaley and Harmon had mutual professional respect for each other but "rarely" interacted and there was no evidence of any shared loyalty that would have influenced Whaley's advice to the Board in the William Jefferson case. The district court concluded that "[t]here is simply no evidence that [Harmon] was ever in a position to influence Ms. Whaley's advice, if any, to the Board."

The district court also issued ten conclusions of law. The district court found that § 31000.7 expressly permits one member of the County Counsel's office to advise the Board in a hearing in which another member represents the Assessor. The district court concluded that this provision was not unconstitutional on its face because the dual representation it permits does not necessarily "call[ ] into question the decision-maker's impartiality." The district court also concluded that the statute did not violate due process as applied in William Jefferson's case, because there was no evidence that Whaley's advice to the Board was improperly influenced by her professional respect for Harmon. The district court added that even if Whaley had been so influenced, the Board, not Whaley, was the decision-maker in William Jefferson's case and there was no evidence that it was biased.

The district court entered judgment against William Jefferson and William Jefferson timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

William Jefferson does not challenge the district court's findings of fact. We review de novo the district court's legal

conclusion that the Board's hearing procedures did not violate William Jefferson's procedural due process rights. *See Singh v. Holder*, 638 F.3d 1264, 1269 (9th Cir. 2011). William Jefferson makes both a facial and an as-applied challenge to California Government Code § 31000.7, the state provision authorizing the county counsel's office to represent both the Board and the Assessor. If William Jefferson's as-applied challenge fails, then William Jefferson's facial challenge necessarily fails as well because there is at least one set of circumstances where application of § 31000.7 does not violate a taxpayer's procedural due process rights. *See United States v. Inzunza*, 638 F.3d 1006, 1019 (9th Cir. 2011) (a facial challenge to a statute necessarily fails if an as-applied challenge has failed because the plaintiff must " 'establish that no set of circumstances exists under which the [statute] would be valid.' " (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987))).

## III

William Jefferson asserts that the dual representation scheme authorized by § 31000.7 denies taxpayers an unbiased adjudicator and undermines the appearance of fairness in the Board's proceedings. William Jefferson also argues that Whaley's interactions with the Board were impermissible ex parte contacts with a decision maker. Finally, William Jefferson suggests that the Orange County Counsel's office has a financial stake in the outcome of taxpayer appeals that could influence the advice its attorneys give to the Board. We consider each of these arguments in turn.

**[1]** We begin our constitutional analysis with the state statutory provision at issue. Section 31000.7 provides in full:

> The same law firm shall not be employed to advise
> or represent both the assessor and the county board
> of equalization[1] on any matters relating to hearings

---

[1]The Orange County Board of Supervisors appoints members of the Board to serve "as the local board of equalization."

before the county board of equalization. This prohi-
bition shall not apply to the county counsel's office.
Individual representatives of that office may repre-
sent the assessor and the county board of equaliza-
tion, as long as the same individual does not
represent both parties.

Although there is no federal authority directly on point, the
California Court of Appeal has held that § 31000.7 does not
violate procedural due process, so long as the attorney advis-
ing the county board is "screened from any inappropriate con-
tact with the advocate [for the assessor]." *Howitt v. Superior
Court*, 5 Cal. Rptr. 2d 196, 203 (Cal. Ct. App. 1992). The Cal-
ifornia court's resolution of a federal constitutional question
is persuasive but is not binding on us. *See Davis v. Metro
Prods., Inc.*, 885 F.2d 515, 519 (9th Cir. 1989).

We turn first to William Jefferson's argument that having
Whaley advise the Board in the same proceeding where Har-
mon represented the Assessor undermined the impartiality of
the Board, or the appearance thereof. "It is axiomatic that '[a]
fair trial in a fair tribunal is a basic requirement of due pro-
cess.' " *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876
(2009) (alteration in original) (quoting *In re Murchison*, 349
U.S. 133, 136 (1955)). "This applies to administrative agen-
cies which adjudicate as well as to courts." *Withrow v. Larkin*,
421 U.S. 35, 46 (1975). Moreover, "justice must satisfy the
appearance of justice." *Marshall v. Jerrico, Inc.*, 446 U.S.
238, 243 (1980) (quoting *Offutt v. United States*, 348 U.S. 11,
14 (1954)). Accordingly, due process requires that "a judge
must recuse himself when he has a 'direct, personal, substan-
tial, pecuniary interest' in a case." *Caperton*, 556 U.S. at 876
(quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)); *see also
Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995) ("[T]he
adjudicator's pecuniary or personal interest in the outcome of
the proceedings may create an *appearance of partiality* that
violates due process, even without any showing of actual
bias.").

William Jefferson relies heavily on the Supreme Court's recent decision in *Caperton*, which held that due process calls for an objective inquiry into "whether the average judge in [the adjudicator's] position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.' " 556 U.S. at 881. The Court concluded that a state supreme court justice was required to recuse himself from hearing a case where the president of the defendant corporation had contributed three million dollars to the justice's election campaign. *Id.* at 884-85. Because William Jefferson does not allege that the Board members had a direct personal or pecuniary interest in the outcome of its appeal, the Court's *Caperton* analysis is of limited use here.

*Withrow v. Larkin* is the Supreme Court authority most relevant to resolving William Jefferson's due process challenge. Larkin was a doctor licensed by the Wisconsin Examining Board. *Withrow*, 421 U.S. at 38. The Examining Board sent Larkin a hearing notice and informed him that on the basis of the evidence presented at the hearing, it would determine whether he had violated state licensing statutes, whether he should be warned or reprimanded, and whether to institute an action to revoke his license or a criminal action against him. *Id.* at 39. Larkin filed suit in federal district court, asserting that this combination of investigative and adjudicative functions within the Examining Board denied him procedural due process. *Id.* at 41-42. The three-judge district court agreed with Larkin that permitting the Examining Board to suspend his license "at its own contested hearing on charges evolving from its own investigation would constitute a denial to [Larkin] of his rights to procedural due process" and enjoined the Examining Board from proceeding against Larkin. *Id.* at 42. The district court found that the state statute authorizing this regulatory scheme was unconstitutional. *Id.*

**[2]** The Supreme Court reversed. First, the Court explained that Larkin had to "overcome a presumption of honesty and integrity in those serving as adjudicators" and show that "con-

ferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment" that due process forbids the practice. *Id.* at 47. The Court held that the mere fact that investigative and adjudicative powers are combined in a state administrative agency, without more, did not violate due process. *Id.* at 48-52. The Court cautioned, however, that federal courts must "be alert to the possibilities of bias that may lurk in the way particular procedures actually work in practice." *Id.* at 54; *see also id.* at 58.

William Jefferson argues that the Board's procedures created the appearance of unfairness. In *Withrow*, the Court held that the same members of the state's Examining Board could investigate Larkin and adjudicate claims arising from that investigation without running afoul of due process. *Id.* at 58. The *Withrow* facts are not directly analogous to the facts before us because the asserted impermissible overlap there was between investigative and adjudicative functions. Here the asserted overlap is between prosecutorial and adjudicative functions, which potentially raises a greater concern about bias. The problem for William Jefferson is that here the Board acted only as an adjudicator. William Jefferson makes no allegation that the Board itself was involved in valuing or defending the Assessor's valuation of the property. It is true that Harmon, the prosecutor, worked in the same public law office as Whaley, the Board's advisor, but they performed different functions and were carefully screened from each other. The prosecutorial and adjudicative functions in William Jefferson's assessment appeal were kept much further apart than the investigative and adjudicative functions in *Withrow*, where the same individuals performed both roles.

We rejected an argument similar to William Jefferson's in *United States v. Oregon*, 44 F.3d 758 (9th Cir. 1994). There, the Klamath Tribe argued that the State of Oregon's administrative proceedings for determining water rights denied the Tribe an adjudication by a fair tribunal. *Id.* at 771. The Oregon Department of Justice, which provided legal advice to the

administrative adjudicator, had previously argued against the existence of treaty rights that were the basis for the Tribe's claim to water rights. *Id.* at 771-72. We concluded that the Tribe failed to show how the Oregon Department of Justice's "prior hostility to certain Treaty rights" could affect the agency's subsequent determination of water rights or the reviewing state court's decision whether to enforce that determination. *Id.* at 772. Our precedent therefore suggests that even if there were some evidence that Whaley was biased in favor of the Assessor, which there is not, that evidence might not be sufficient to conclude that the adjudicating body —the Board itself—was biased.

**[3]** In our case, the district court found that the Orange County Counsel's office meticulously followed screening procedures to prevent any improper exchange of information between attorneys advising the Board and attorneys representing the Assessor. This finding is unchallenged. In addition, the Board members are presumed to discharge their adjudicative responsibilities with honesty and integrity. *See Withrow*, 421 U.S. at 47. Under *Withrow*, the dual representation system authorized by § 31000.7, on its own, is not sufficient to overcome that presumption. We conclude that the Orange County Counsel's office screening procedures were sufficient to ensure that William Jefferson's case was heard by an impartial adjudicator.

**[4]** William Jefferson also argues that Whaley's discussions with the Board were impermissible ex parte contacts. In the absence of a compelling justification, "ex parte communication will not be tolerated." *Guenther v. CIR*, 889 F.2d 882, 884 (9th Cir. 1989). Ex parte contacts, however, are contacts between the adjudicator and an interested party, of which the other party is unaware. *See* Black's Law Dictionary 657 (9th ed. 2009); *Camero v. United States*, 375 F.2d 777, 781 (Ct. Cl. 1967) ("It is difficult to imagine a more serious incursion on fairness than to permit *the representative of one of the parties* to privately communicate his recommendation to the deci-

sion makers.") (emphasis added). Whaley did not represent any party to William Jefferson's appeal, she was the Board's legal advisor. As a result, her communications with the Board were not ex parte. The cases William Jefferson cites for the proposition that ex parte communications may violate procedural due process are therefore inapposite.[2]

Finally, William Jefferson argues that the Orange County Counsel's office has a financial incentive to advise the Board to rule against taxpayers because a portion of the fees that the Board collects for written findings of fact are paid to the County Counsel's office. The district court did not make any findings of fact on this issue but Whaley and the Board's clerk testified that the Orange County Counsel's office receives approximately two-thirds of the fees collected by the Board when a taxpayer requests written findings of fact. This fact does little to help William Jefferson's case. The Board prepares written findings of fact only when a taxpayer requests them and pays the required fee, which the party does prior to commencement of the hearing. William Jefferson has not shown that there is anything that Whaley, or any other member of the County Counsel's office, can do to encourage this request. In addition, the fees are collected and distributed to the County Counsel's office for the attorney-advisor's work, regardless of which party prevails before the Board.

---

[2]Many of the cases that William Jefferson relies on analyze statutory, rather than constitutional, standards for determining whether particular ex parte contacts with administrators were impermissible. *See, e.g.*, *Gonzales v. United States*, 348 U.S. 407, 411-12 (1955) (evaluating under the Universal Military Training and Service Act a conscientious objector's challenge to procedures employed by the Department of Justice Appeal Board); *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1539 (9th Cir. 1993) (analyzing whether ex parte contacts between White House staffers and a federal agency violated the Administrative Procedure Act); *Grolier Inc. v. FTC*, 615 F.2d 1215, 1217 (9th Cir. 1980) (analyzing whether an ALJ was disqualified from a particular case under the Administrative Procedure Act and declining to reach a due process challenge).

Whaley testified that her salary is in no way tied to the substance of her advice to the Board and her testimony was not rebutted. William Jefferson does not explain how the fact that the Orange County Counsel's office is paid for the time its employees spend preparing written findings of fact for the Board has any influence on the attorney advising the Board or on the Board itself.

**[5]** We hold that § 31000.7, which permitted Whaley to advise the Board in the same proceeding where her colleague —also from the Orange County Counsel's office— represented the Assessor, does not violate due process as applied in this case. As long as the county counsel's office maintains an ethical wall that prevents attorneys representing the Assessor from supervising attorneys who advise the Board or sharing case information with them, the county counsel's dual representation does not undermine the Board's impartiality.

**AFFIRMED.**