**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| WELLS FARGO BANK, N.A.,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>MAHOGANY MEADOWS AVENUE TRUST,<br>*Defendant-Appellee*,<br><br>and<br><br>COPPER CREEK HOMEOWNERS ASSOCIATION; HAMPTON & HAMPTON COLLECTIONS, LLC,<br>*Defendants.* | No. 18-17320<br><br>D.C. No.<br>2:17-cv-01469-<br>JCM-VCF<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted May 12, 2020
Pasadena, California

Filed November 5, 2020

Before: Mary H. Murguia and Eric D. Miller, Circuit Judges, and George Caram Steeh III,[*] District Judge.

Opinion by Judge Miller

**SUMMARY**[**]

**Nevada Foreclosure Law / Takings Clause**

The panel affirmed the district court's judgment dismissing for failure to state a claim Wells Fargo Bank, N.A.'s quiet title action against the purchaser of real property at a foreclosure sale, a homeowners' association ("HOA"), and the HOA's agent.

Wells Fargo sought a declaration that the foreclosure sale was invalid and that Wells Fargo's deed of trust continued as a valid encumbrance against the real property in Las Vegas, Nevada.

Nevada Revised Statutes section 116.3116 grants an HOA a lien on its members' residences for certain unpaid assessments and charges, rendering that portion superior to all other liens, including the first deed of trust held by the mortgage lender.

---

[*] The Honorable George Caram Steeh III, United States District Judge for the Eastern District of Michigan, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Agreeing with both the Nevada Supreme Court, *see Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortgage, a Division of Wells Fargo Bank, N.A.*, 388 P.3d 970, 975 (Nev. 2017), and the district court, the panel held that Wells Fargo did not suffer an uncompensated taking under the Takings Clause of the U.S. Constitution. The panel noted that the foreclosure proceeding itself was not a taking because the Takings Clause governs the conduct of the government, not private actors, and the foreclosing HOA was not an arm of the State of Nevada. The panel rejected Wells Fargo's contention that the enactment of section 116.3116 was a taking.  Because the enactment of section 116.3116 predated the creation of Wells Fargo's lien on the property, Wells Fargo could not establish that it suffered an uncompensated taking.

The panel agreed with the district court's conclusion that Wells Fargo received constitutionally adequate notice of the foreclosure sale.  Wells Fargo conceded it received actual notice of the foreclosure sale, but argued the contents of the notices were constitutionally deficient because they did not state that the HOA was foreclosing to satisfy the superpriority portion of the lien, how large the superpriority portion was, or that Wells Fargo's own lien was in jeopardy. The panel held that although Wells Fargo characterized its argument as an as-applied challenge, it amounted to an argument that the statute was invalid on its face.  The panel concluded Wells Fargo received precisely the notice prescribed by the statute, and therefore *Bank of America, N.A. v. Arlington West Twilight Homeowners Association*, 920 F.3d 520 (9th Cir. 2019), foreclosed Wells Fargo's due-process challenge.

The panel held that the district court did not abuse its discretion in denying Wells Fargo's motion for

reconsideration under Fed. R. Civ. P. 59(e) because Wells Fargo could have raised its argument earlier.

---

## COUNSEL

Andrew M. Jacobs (argued), Snell and Wilmer LLP, Phoenix, Arizona; Kelly H. Dove, Snell and Wilmer LLP, Las Vegas, Nevada; for Plaintiff-Appellant.

Michael F. Bohn (argued), Law Offices of Michael F. Bohn, Henderson, Nevada, for Defendant-Appellee.

---

## OPINION

MILLER, Circuit Judge:

Nevada law gives a homeowners association (HOA) a superpriority lien on properties within the association for certain unpaid assessments. By foreclosing on a property, an HOA can extinguish other liens, including a first deed of trust held by a mortgage lender. We are asked to decide whether this scheme effects an uncompensated taking of property or violates the Due Process Clause. We conclude that it does not.

I

Many residential developments include amenities that are held in common by owners of property within the development and managed by an HOA. *See generally Nahrstedt v. Lakeside Vill. Condominium Ass'n*, 878 P.2d 1275, 1279–84 (Cal. 1994). To maintain those amenities, HOAs may levy assessments on their members.

Nevada Revised Statutes section 116.3116 grants an HOA a lien on its members' residences for certain unpaid assessments and charges. Nev. Rev. Stat. § 116.3116(1). (All statutory references are to the version in effect in 2013.) Of particular relevance here, section 116.3116 grants superpriority status to a portion of the HOA lien—specifically, the portion that "consists of the last nine months of unpaid HOA dues and any unpaid maintenance and nuisance-abatement charges." *Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 622 (9th Cir. 2019) (per curiam); Nev. Rev. Stat. § 116.3116(2). With only a few exceptions, the superpriority portion of the lien "is superior to all other liens on the property, including the first deed of trust held by the mortgage lender." *Arlington W.*, 920 F.3d at 622; *accord SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 410 (Nev. 2014). "This means that an HOA can extinguish the first deed of trust by foreclosing on its superpriority lien." *Arlington W.*, 920 F.3d at 622.

In 2008, Luis Carrasco and Janet Kongnalinh purchased a house in Las Vegas that was within the Copper Creek HOA and subject to its covenants, conditions, and restrictions, including an obligation to pay dues and other assessments to the HOA. They financed the purchase with a loan from Wells Fargo, N.A., and to secure the loan, they recorded a deed of trust in favor of Wells Fargo. About three years later, Carrasco and Kongnalinh fell behind on their HOA dues, and the HOA recorded a lien for the delinquent assessments. The HOA ultimately foreclosed on the property to satisfy its lien, and in 2013, Mahogany Meadows Avenue Trust purchased the property at a public auction for $5,332, extinguishing Wells Fargo's deed of trust.

Wells Fargo then brought this quiet-title action against Mahogany Meadows, the HOA, and the HOA's agent. Wells

Fargo sought a declaration that the foreclosure sale was invalid and that Wells Fargo's deed of trust "continues as a valid encumbrance against the Property," which was then worth approximately $200,000. Wells Fargo asserted that section 116.3116 violates the Takings Clause and the Due Process Clause.

The district court dismissed Wells Fargo's complaint for failure to state a claim. First, as to the takings claim, the district court relied on *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortgage, a Division of Wells Fargo Bank, N.A.*, 388 P.3d 970, 975 (Nev. 2017), in which the Nevada Supreme Court held that "the extinguishment of a subordinate deed of trust through an HOA's nonjudicial foreclosure does not violate the Takings Clause[]." Second, as to the due-process claim, the district court determined that Wells Fargo received actual notice of the delinquent assessment and the foreclosure sale, and it concluded that the notice to Wells Fargo was sufficient to satisfy due process.

Wells Fargo moved for reconsideration, arguing for the first time that because Carrasco was an active-duty member of the Army Reserve, the foreclosure sale violated the Servicemembers Civil Relief Act, 50 U.S.C. § 3953. The district court denied reconsideration because Wells Fargo did not explain why it was unable to discover Carrasco's status earlier.

## II

As the district court noted, the Nevada Supreme Court has held that section 116.3116 does not violate the Takings Clause. *See Saticoy Bay*, 388 P.3d at 975. Although we give respectful consideration to that decision, we are not bound by a state court's resolution of a federal constitutional question but instead consider the question de novo. *See*

*William Jefferson & Co. v. Bd. of Assessment & Appeals No. 3 ex rel. Orange County*, 695 F.3d 960, 963 (9th Cir. 2012). We also review the district court's grant of a motion to dismiss de novo. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1115 (9th Cir. 2013). We agree with both the Nevada Supreme Court and the district court, and we conclude that Wells Fargo has not suffered an uncompensated taking.

The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V; *see Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 247 (1897). The Supreme Court has long recognized that contingent interests in property, including liens such as Wells Fargo's deed of trust, constitute "property" under the Takings Clause. *See United States v. Security Indus. Bank*, 459 U.S. 70, 76 (1982); *Armstrong v. United States*, 364 U.S. 40, 48 (1960); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 602 (1935). Although "[t]he 'bundle of rights' which accrues to a secured party is obviously smaller than that which accrues to an owner in fee simple," the Court has rejected "the proposition that differences such as these relegate the secured party's interest to something less than property." *Security Indus. Bank*, 459 U.S. at 76.

At first glance, Wells Fargo's theory appears straightforward. A lien is property; Wells Fargo once had a lien; the HOA's foreclosure sale extinguished that lien; and Wells Fargo was not paid compensation. Wells Fargo argues that it suffered "a complete ouster of a property interest" that constitutes "a *per se*, physical taking." Because Wells Fargo's lien was an intangible interest, we are not sure that it makes sense to apply the analysis applicable to physical

takings, as opposed to the regulatory-takings analysis of *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978).

We need not dwell on that question, however, because under any analysis, Wells Fargo's theory quickly encounters a problem: identifying exactly what action constituted the taking. The most obvious candidate is the foreclosure proceeding, but Wells Fargo does not argue that the foreclosure was a taking, and with good reason. The Takings Clause governs the conduct of the government, not private actors. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994). The Copper Creek HOA, which conducted the foreclosure here, is not an arm of the State of Nevada.

The Supreme Court has held that "[p]rivate use of state-sanctioned private remedies or procedures does not rise to the level of state action." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988). So although the HOA's action was authorized by Nevada law, that authorization "does not transmute it into government action sufficient for the Fifth Amendment." *Broad v. Sealaska Corp.*, 85 F.3d 422, 431 (9th Cir. 1996); *accord Apao v. Bank of N.Y.*, 324 F.3d 1091, 1095 (9th Cir. 2003) (nonjudicial foreclosure authorized by Hawaii law was not state action); *Charmicor v. Deaner*, 572 F.2d 694, 695 (9th Cir. 1978) (trustee's sale authorized by Nevada statute was not state action). Indeed, in considering a due-process challenge to section 116.3116, we held that although the Nevada Legislature's enactment of the statute was state action, "the foreclosure sale itself is a private action." *Bourne Valley Court Trust v. Wells Fargo Bank*, 832 F.3d 1154, 1160 (9th Cir. 2016).

Wells Fargo therefore focuses not on the foreclosure proceeding, but on the enactment of section 116.3116. Here, however, its theory encounters a different problem: Section

116.3116 was enacted in 1991; the HOA's covenants, conditions, and restrictions, which created the obligation to pay dues, were recorded in 2003; and both of those things had happened before 2008, when Wells Fargo acquired its lien. The interest Wells Fargo is asserting—that is, the right to maintain its lien unimpaired by a later HOA lien—was "not part of [its] title to begin with." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1027 (1992). When "'background principles' of state law already serve to deprive the property owner" of the interest it claims to have been taken, it cannot assert a claim under the Takings Clause. *Esplanade Props., LLC v. Seattle*, 307 F.3d 978, 985 (9th Cir. 2002) (quoting *Lucas*, 505 U.S. at 1029). The State cannot take what the owner never had.

The Supreme Court applied that principle in *Security Industrial Bank*, in which it construed a provision of the Bankruptcy Code that permitted individual debtors in bankruptcy proceedings to avoid certain liens on their property. The Court explained that applying the statute retroactively—that is, to liens created before the statute's enactment date—would raise "'difficult and sensitive questions arising out of the guarantees of the' takings clause." 459 U.S. at 81–82 (quoting *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 507 (1979)). The Court therefore construed the statute to apply only prospectively—that is, to liens created after the enactment date—to avoid any potential Takings Clause issue. *Id.* As several courts of appeals have concluded, "*Security Industrial Bank* strongly suggests if not implicitly holds that prospective application of [a statute] would not impermissibly tread on the Takings Clause." *In re Weinstein*, 164 F.3d 677, 685 (1st Cir. 1999); *accord In re Thompson*, 867 F.2d 416, 422 (7th Cir. 1989).

Consistent with that understanding, we rejected a takings claim asserted by a buyer of property that was subject to a tax lien that the IRS later sought to redeem. *Vardanega v. IRS*, 170 F.3d 1184, 1187–88 (9th Cir. 1999). We explained that when the buyer purchased the property, he did so "with notice of an encumbrance—the statutory right of redemption by the United States," which had been codified many years earlier. *Id.* at 1187. We reasoned that the buyer "did not purchase clear title to fee property, but property encumbered by a right of redemption." *Id.* at 1187. Accordingly, "[b]y exercising its statutory right of which [the buyer] had notice, the IRS did not divest [the buyer] of any vested property interest in violation of the Fifth Amendment." *Id.* Employing similar reasoning, the Federal Circuit has held that a statute giving superpriority status to liens held by the Commodity Credit Corporation "constitute[s] a 'background principle' that inheres in the title to property interests arising after its enactment, therefore precluding a takings claim based on the application of the statute to those property interests." *Bair v. United States*, 515 F.3d 1323, 1329 (Fed. Cir. 2008).

Wells Fargo argues that applying those principles here produces a harsh result because it allows a small HOA lien to wipe out the value of Wells Fargo's much larger deed of trust. But that result is no harsher than the result produced by foreclosures to satisfy property-tax liens, which, though sometimes small, can take priority over other interests in the property. *See Nelson v. City of New York*, 352 U.S. 103, 109–10 (1956). And it is a result that Wells Fargo easily could have avoided. Had Wells Fargo deemed a lien subject to such a scheme to be inadequate security for its loan, it could have refused to lend. Alternatively, as the Nevada Supreme Court observed, Wells Fargo "could have paid off the [HOA] lien to avert loss of its security; it also could have established an escrow for [HOA] assessments to avoid having to use its

own funds to pay delinquent dues." *SFR Invs.*, 334 P.3d at 414.

Wells Fargo asserts that it could not have known about the potential impairment of its lien because even though section 116.3116 was enacted before it acquired its lien, only in the *SFR Investments* decision "did the Nevada Supreme Court radically reinvent [the statute] and hold that it not only granted a homeowner's association first-payment priority during foreclosure, but that foreclosure of such a lien also destroyed every other lien on the property." The Nevada Supreme Court has explained that *SFR Investments* did not change the law but "did no more than interpret the will of the enacting legislature." *K&P Homes v. Christiana Tr.*, 398 P.3d 292, 294 (Nev. 2017). If the Nevada courts wish to treat that interpretation as reflecting the meaning of the statute from the day it was enacted, we see no principle of federal constitutional law that would prevent them from doing so. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 94–95 (1993); *cf. Danforth v. Minnesota*, 552 U.S. 264, 271 (2008).

We recognize that a plurality of the Supreme Court in *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 560 U.S. 702, 715 (2010), stated that a judicial decision "declar[ing] that what was once an established right of private property no longer exists" would constitute a taking. But Wells Fargo does not argue that the *SFR Investments* decision was a taking, nor could it plausibly do so. For such an argument to succeed, Wells Fargo would have to demonstrate that a contrary interpretation of section 116.3116 had been established in Nevada law before *SFR Investments*. *Id.* at 732 (majority opinion) ("The Takings Clause only protects property rights as they are established under state law, not as they might

have been established or ought to have been established."). We are aware of nothing in Nevada law that would support that proposition.

Wells Fargo points to cases in which, it says, the Supreme Court held the application of a statute to a later-acquired interest to be a taking. It relies on *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), which involved a New York statute forcing a landowner to submit to a permanent physical occupation of its property by cable television facilities. As Wells Fargo emphasizes, the facilities at issue had been installed several years before the plaintiff purchased the property. *Id.* at 421–23. But that installation took place with the consent of the property owner, who was paid five percent of the revenues the cable company received from the facility; it was not until two years after the plaintiff's purchase that New York enacted the statute compelling her to allow the facilities to remain and limiting her compensation to a one-time fee of $1. *Id.* at 423–24. The case therefore involved the application of a statute to authorize the invasion of a property interest the owner already had, which is why the Supreme Court held that it effected a taking.

To be sure, the Supreme Court has elsewhere rejected the view that "the postenactment transfer of title would absolve the State of its obligation to defend any action restricting land use, no matter how extreme or unreasonable." *Palazzolo v. Rhode Island*, 533 U.S. 606, 627 (2001). We do not suggest, for example, that a State could enact a statute providing that any property that changes hands after the enactment date may be seized without compensation. Such a law would seriously impair currently existing property rights. *Cf. Thompson*, 867 F.2d at 422. But this case is different because the property right that Wells Fargo is

asserting (the right to maintain its lien unimpaired by the HOA's lien) is one that *no one* ever held—not Wells Fargo, and not the homeowners who created the lien. At the time Wells Fargo's lien was created, both section 116.3116 and the Copper Creek HOA's covenants, conditions, and restrictions were already in place, and together, they meant that any HOA lien would have priority.

Finally, Wells Fargo relies on *Armstrong*, but that case does not support its position. In *Armstrong*, a supplier of materials to a Navy contractor held liens under state law on those materials. 364 U.S. at 41. Under the government's agreement with the prime contractor, the United States was entitled to a "paramount" lien on the work done. *Id.* at 43–45. When the prime contractor defaulted, the government exercised its contractual right to seize all completed work and unused materials. *Id.* at 41. That action did not extinguish the suppliers' liens, but the government's sovereign immunity meant that the suppliers became unable to enforce the liens. *Id.* at 48. Although the Court held that the seizure constituted a taking because it effectively destroyed the suppliers' remaining valid property interest, it recognized that their interest was limited to "whatever proceeds the property might bring over and above the [g]overnment's claim to the amount of its progress payments." *Id.* at 45. The Court did not question that the government's entitlement to a paramount lien could limit the suppliers' later-arising property interests, so its conclusion is consistent with the rule we apply today.

Because the enactment of section 116.3116 predated the creation of Wells Fargo's lien on the property, Wells Fargo cannot establish that it suffered an uncompensated taking.

### III

Wells Fargo also argues that the foreclosure sale was invalid because it was not preceded by constitutionally adequate notice. The Due Process Clause "requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). We agree with the district court's conclusion that Wells Fargo received constitutionally adequate notice.

This is not the first time we have considered a due-process challenge to the Nevada statute. In *Bourne Valley*, we read that statute to create an "opt-in" notice scheme under which a lien holder would be notified of a foreclosure sale only if it had previously advised the HOA that it wished to be notified. 832 F.3d at 1158. As noted above, we recognized that the foreclosure sale itself was not state action. *Id.* at 1160. But we concluded that the Nevada legislature's enactment of the statute was state action, and we held that the statute, construed to create an "opt-in" notice scheme, violated the Due Process Clause because it impermissibly shifted the burden of notice to lien holders. *Id.* at 1158–59. Thereafter, the Nevada Supreme Court adopted a different interpretation of the statute, holding that it requires an HOA "to provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." *SFR Invs. Pool 1, LLC v. Bank of N.Y. Mellon*, 422 P.3d 1248, 1253 (Nev. 2018). Relying on that interpretation, we held that "*Bourne Valley* no longer controls the analysis," and that the statute "is not facially unconstitutional." *Arlington W.*, 920 F.3d at 624.

Wells Fargo argues that *Arlington West* is not controlling here because that case involved only a facial challenge, while this one involves an as-applied challenge. A facial challenge requires a plaintiff to "establish that no set of circumstances exists under which [a statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). An as-applied challenge, by contrast, focuses on the statute's application to the plaintiff. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010). Here, Wells Fargo concedes that it received actual notice of the foreclosure sale. But it argues that the contents of the notices were constitutionally deficient because they did not state that the HOA was foreclosing to satisfy the superpriority portion of its lien, how large the superpriority portion was, or that Wells Fargo's own lien was in jeopardy.

Although Wells Fargo characterizes its argument as an as-applied challenge, it amounts to an argument that the statute is invalid on its face. Nevada law requires the HOA to provide all junior interest holders (1) "notice of default and election to sell the [property] to satisfy the lien," (2) notice of "the amount of the assessments and other sums which are due," and (3) "notice of time and place of the [foreclosure] sale." Nev. Rev. Stat. §§ 116.31162(1), 311635(1), 116.31168(1)–(3). Wells Fargo received precisely the notice prescribed by the statute. Wells Fargo does not argue that it is particularly unsophisticated, so that a level of notice that might be adequate for an average person would be inadequate for it. Instead, Wells Fargo argues that the notice contemplated by the statute is insufficient. If that is correct, then the notice would be equally insufficient for any holder of an interest in the property, which would mean that essentially all applications of the statute are invalid. We held the opposite in *Arlington West*, concluding that because the mortgage lender there did "not dispute that it received

actual notice . . . . [i]ts due process rights were . . . not violated." 920 F.3d at 624. That holding controls this case, and it forecloses Wells Fargo's due-process challenge.

IV

We review the district court's denial of Wells Fargo's motion for reconsideration under Federal Rule of Civil Procedure 59(e) for abuse of discretion. *See Micha v. Sun Life Assurance of Can., Inc.*, 874 F.3d 1052, 1056 (9th Cir. 2017). A district court generally should not grant a Rule 59(e) motion in the absence of "newly discovered evidence," "clear error," or "an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). A Rule 59(e) motion "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

In seeking reconsideration, Wells Fargo argued that the foreclosure sale violated the Servicemembers Civil Relief Act, 50 U.S.C. § 3953. We need not consider whether Wells Fargo's interpretation of that statute is correct—or whether Wells Fargo, which is not itself a service member, has standing to invoke the statute—because the district court correctly determined that Wells Fargo could have raised the issue earlier. Indeed, Wells Fargo conceded below that the evidence on which it relied "was theoretically available" when it filed its response to the motion to dismiss. Wells Fargo does not explain why it was unable to "discover[] the evidence sooner through the exercise of reasonable diligence." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 998

(9th Cir. 2001). The district court did not abuse its discretion in denying reconsideration.

**AFFIRMED**.