**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 9 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>SCOTT RHODES,<br><br>Defendant-Appellant. | No. 24-4277<br><br>D.C. No.<br>9:21-cv-00110-DLC<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Submitted May 29, 2026**

Before: RAWLINSON, H.A. THOMAS, and MENDOZA, Circuit Judges.

Defendant-Appellant Scott Rhodes appeals the district court's judgment

enforcing a forfeiture order issued by the Federal Communications Commission

("FCC") pursuant to the Truth in Caller ID Act ("TICIDA"), 47 U.S.C. § 227(e),

and imposing a forfeiture penalty of $9,918,000. We affirm.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

The district court properly concluded that the undisputed evidence established liability under TICIDA.  TICIDA prohibits causing "any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value."  47 U.S.C. § 227(e)(1).  The record reflects that Rhodes used a dialing service to transmit thousands of robocalls displaying spoofed and misleading caller-identification information.

While Rhodes argues that he did not personally place the calls, TICIDA extends to persons who "cause" misleading caller-identification information to be transmitted, and the record demonstrated that the campaigns originated through accounts, infrastructure, and online platforms associated with Rhodes.  *See* 47 U.S.C. § 227(e)(1).

The district court also correctly rejected Rhodes's contention that TICIDA is facially overbroad or unconstitutional as applied to his conduct.  TICIDA regulates deceptive telecommunications practices, not protected viewpoints.  *See United States v. Waggy*, 936 F.3d 1014, 1019 (9th Cir. 2019) (holding that "placing calls with the specific intent to harass" is a regulation of "nonexpressive conduct.").  The statute does not prohibit anonymous political advocacy.  Instead, it prohibits the conduct of knowingly transmitting misleading or inaccurate caller-

identification information with prohibited intent.  *See* 47 U.S.C. § 227(e)(1).[1]

Rhodes also argues that the government improperly transformed alleged violations of the Telephone Consumer Protection Act ("TCPA") into TICIDA liability.  But the district court concluded that the undisputed evidence independently demonstrated that Rhodes had violated TICIDA.

The district court also properly rejected Rhodes's various procedural challenges.  To the extent Rhodes sought to invalidate FCC regulations or collaterally attack agency rulemaking, such claims are likely foreclosed by our precedent limiting district court review in FCC enforcement proceedings.  *See United States v. Dunifer*, 219 F.3d 1004, 1007–08 (9th Cir. 2000).  In any event, Rhodes received notice of the forfeiture proceedings, filed arguments in response before the FCC, and received de novo judicial review in the district court pursuant to 47 U.S.C. § 504(a).

Nor did the district court abuse its discretion in denying Rhodes's motions for recusal and transfer of venue.  Judicial rulings and ordinary case management decisions generally do not establish the deep-seated favoritism or antagonism

---

[1] Nor did the district court err in concluding that the First Amendment does not shield Rhodes's conduct merely because the robocalls involved political subject matter or offensive expression.  The government did not impose liability based on Rhodes's viewpoints or the ideological content of the calls.  Liability stemmed from the deceptive use of spoofed caller-identification information and the harms associated with that *conduct*.

necessary for recusal. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). Rhodes's allegations primarily concern adverse rulings and disagreements regarding litigation management, which are insufficient as a matter of law. *Id.* Likewise, Rhodes failed to demonstrate that venue in Montana was improper or that transfer was warranted under the applicable statutory factors. *See* 28 U.S.C. §§ 1391(b)(1), 1395(a).

The district court similarly acted within its discretion in striking certain filings and denying reconsideration. *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 637 (9th Cir. 2012) (reviewing motion to strike for abuse of discretion); *Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*, 979 F.3d 1209, 1218 (9th Cir. 2020) (same for motion for reconsideration).

Finally, the forfeiture imposed by the district court does not violate the Excessive Fines Clause of the Eighth Amendment. *See United States v. Bajakajian*, 524 U.S. 321, 336 (1998) (noting that the Eighth Amendment does not "requir[e] strict proportionality" between the penalty amount and the offense). Congress authorized forfeitures of up to $10,000 per violation. *See* 47 U.S.C. § 227(e)(5)(A)(i). The FCC imposed a forfeiture of $2,000 per unlawful call for 4,959 violations, well below the $10,000 per violation statutory maximum. Given the scale, repeated nature, and concealed-but-intentional character of Rhodes's

conduct, the district court properly concluded that the forfeiture was not grossly disproportionate to the gravity of the offense.

**AFFIRMED.**